895 So.2d 448 (2005)
FAST RELEASE BAIL BONDS, INC., and Friendly Bail Bonds, Inc., Appellants,
v.
STATE of Florida, Appellee.
No. 4D02-2790.
District Court of Appeal of Florida, Fourth District.
February 2, 2005.
Rehearing Denied March 24, 2005.
*449 Rachel S.G. Dooley, Paige C. Tarver, Joseph F. Frederick, III of Dooley, Tarver & Frederick, Miami, for appellants.
Edward A. Dion, Andrew J. Meyers, James D. Rowlee and Beth-Ann E. Herschaft, Fort Lauderdale, for appellee.
MAY, J.
Two sureties appeal an order denying their motion to set aside a bond estreature.[1] They argue that they were prejudiced by the court's issuance of a capias for the defendant and the court erred in failing to set aside the bond estreature. We disagree and affirm.
On October 8, 2001, the trial judge notified the defendant in court of an upcoming hearing on November 9, 2001. The defendant failed to appear. The trial court issued a "no bond" alias capias and estreated the bond.
The sureties moved to have the estreature set aside based upon the clerk's failure to properly notice them for the November 9, 2001 hearing. On January 8, 2002, the trial court set aside the estreature, but did not vacate the alias capias. The court set the case for hearing on February 24, 2002. The clerk noticed the error in the month, and immediately issued a corrected notice for January 24, 2002.
At that hearing, the sureties argued they had been prejudiced due to the change in the hearing date and because the case was re-set within three weeks of the January 8, 2002 hearing. They advised the court that when they learned of the earlier bond estreature, they contacted the defendant and told him of the "no bond" capias. The defendant told them he would not surrender because he did not want to go to jail. The defendant then fled to Texas where the sureties were unable to capture him. The court estreated the bond for a second time.
The sureties filed another motion to set aside the bond estreature. After two continuances, the trial court heard the sureties' motion to set aside the second estreature on May 30, 2002. On June 3, 2002, the court denied the motion.
The essence of the sureties' argument is the trial court's failure to set aside the capias prejudiced their ability to surrender the defendant because the capias *450 caused the defendant to flee. We disagree.
"A bond is a three-party contract made by the [S]tate, the accused, and the surety, guaranteeing the accused's presence before the court." Bush v. Int'l Fid. Ins. Co., 834 So.2d 212, 214 (Fla. 4th DCA 2003) (citing Wiley v. State, 451 So.2d 916, 922 (Fla. 1st DCA 1984)). If the State interferes with the surety's right to control the accused, then the surety is discharged. Id. Here, however, the State did not interfere with the surety's control of the defendant.
The trial court correctly issued the "no bond" capias for the defendant when he failed to appear for the November hearing. While the original trial court initially erred in estreating the bond, it corrected that error when it set aside the estreature on January 8, 2002, due to lack of proper notice. See § 903.26(1)(b), Fla. Stat. (2003). It was the defendant's independent decision to flee the jurisdiction that interfered with the sureties' control over him. Thus, the sureties are not relieved from their contractual obligation to produce the defendant.
When the court re-noticed the matter for hearing in January 2002, the sureties were required to produce the defendant or suffer the consequences. They were unable to produce the defendant. The court correctly estreated the bond the second time. The successor trial court then correctly denied the sureties' motion to set aside the properly issued bond estreature. We affirm.
POLEN, J., concurs.
BERNSTEIN, SCOTT, Associate Judge, dissents with opinion.
BERNSTEIN, SCOTT M., Associate Judge, dissenting.
I respectfully dissent. The bail bondsmen here acted as guarantors of a defendant's obligation to appear in Court when noticed. The majority opinion correctly notes "[a] bond is a three party contract made by the state, the accused, and the surety, guaranteeing the accused's presence before the Court." The law of guaranty holds that any material change in the terms of the underlying agreement, which operates to the detriment of a guarantor, releases the guarantor from liability. See Rizzi v. Serv. Dev. Corp., 354 So.2d 898 (Fla. 4th DCA 1978).
The majority opinion apparently recognizes this principle but construes it too narrowly in the context of this case. The majority states, "[i]f the State interferes with the surety's right to control the accused, then the surety is discharged."[2] I believe the correct application of the law should be that, if ANYONE materially interferes with the surety's right to control the defendant, the surety is discharged.
Here, it was the Court, not the State, which interfered with the sureties' right to control the defendant. The defendant was noticed for a hearing. He failed to appear. A no bond alias capias was issued and the bond was estreated. The sureties argued (correctly) that, since they had not received proper notice, the estreature should be set aside. The court (correctly) set aside the estreature. But here is where the court had an option. It could have quashed the capias, renoticed the defendant and renoticed the bondsmen. This would have put ALL parties back in the same position they were in before the notice problem arose. Then, if the defendant failed to appear, the court could properly *451 issue a capias and estreat the bond. However, the court chose another tactic. It chose to renotice the defendant and renotice the bondsmen, but at the same time keep the capias outstanding. This put the State and the Defense back in the same position they were in before the notice problem arose, but it did not return the bondsmen to the status quo. The court certainly had the right to keep the capias outstanding, (the defendant himself had been noticed properly, even if the bondsmen had not), but by doing so, the court materially altered the sureties' ability to control the defendant. The most significant benefit a surety has to offer a criminal defendant is the opportunity for the defendant to remain at liberty pretrial. The court took this benefit away when it kept the capias outstanding. Since the sureties could no longer promise the defendant his liberty pretrial, they had little leverage to encourage the defendant's appearance. Not only does this increase the theoretical risk of flight, the facts here establish this was the very reason the defendant refused to come to court.
The majority opinion asserts "[i]t was the defendant's independent decision to flee the jurisdiction that interfered with the sureties' control over him." I disagree. It was the court's response to defendant's independent decision to flee which caused the interference; it was the trial judge's capias which increased the risk of flight.
Make no mistake  this defendant deserves no sympathy from us for his failure to appear in court. However, the surety should not suffer if a material term of its agreement was changed without its consent. In American Bankers Insurance Co. v. Monroe County, 644 So.2d 560, 561 (Fla. 3rd DCA 1994), the court held "surety contracts of this nature cannot be substantially amended without the express agreement of both parties to the contract." In Wiley v. State, 451 So.2d 916 (Fla. 1st DCA 1984), the court noted a surety may be entitled to discharge of its obligations if there was an impact on the surety's ability to produce the defendant for subsequent proceedings.
I recognize this Court's opinion in Bush v. International Fidelity Insurance Co., 834 So.2d 212 (Fla. 4th DCA 2003), where the facts are quite similar to this case. The trial court estreated a criminal defendant's bond when the defendant failed to appear in court and then set aside the estreature when the bondsman demonstrated it had not been given proper notice. The trial court in International Fidelity also issued a capias at the time of the original estreature and kept the capias outstanding when it renoticed the parties pursuant to statute. However, the legal issue raised by the surety in International Fidelity was whether the court could set aside the bond estreature at all. The surety argued that the bond was discharged when it was originally estreated and that there was no bond in effect when the court renoticed the defendant and the bondsman for hearing. This Court (properly) found this argument unpersuasive. However, the issue raised in this case (that by leaving the capias outstanding the court did not return all parties to their status quo and thus interfered with the surety's custody of the accused, increased the risk of flight and removed the surety's leverage to bring the defendant before the court) was apparently never raised, and certainly was never addressed by this Court, in the International Fidelity opinion. To the extent that International Fidelity can be read to conflict with this position, I would recede from those portions of the International Fidelity opinion.
I would therefore reverse the decision of the trial court and remand with instructions *452 to set aside bond estreature and discharge the bond.
NOTES
[1] There are multiple bonds and multiple sureties in this case, but the chronology of facts and outcome of the motions to set aside the bond estreatures are the same. For ease of reference, we refer to the bonds in a singular form.
[2] The majority finds the State did not interfere here, thus keeping the surety's liability intact and affirming the trial court's refusal to set aside a bond estreature.