929 So.2d 697 (2006)
UNIVERSAL BAIL BONDS, INC. and Indiana Lumbermans Insurance Co., Appellants,
v.
The STATE of Florida, Appellee.
No. 3D05-2215.
District Court of Appeal of Florida, Third District.
May 24, 2006.
*698 Milton Hirsch, Miami, for appellants.
Charles J. Crist, Attorney General, and Phillip P. Quaschnick, Assistant Attorney General, Tallahassee, for appellee.
Before COPE, C.J., and WELLS, and SUAREZ, JJ.
WELLS, Judge.
Universal Bail Bonds, Inc. and Indiana Lumbermans Insurance Co., collectively referred to as Universal, appeal from an order denying a motion to set aside or to discharge a bond estreature. See Mike Snapp Bail Bonds v. Orange County, 913 So.2d 88, 91 (Fla. 5th DCA 2005) (confirming that once a final appealable order or judgment has been rendered, a bonding company may address on appeal the intermediate steps culminating in the final order or judgment). We affirm.
Osvaldo Palmer was charged in a multi-count information with drug trafficking and released from custody upon posting a $15,000 bond. Thereafter, based on the State's notification of intent to seek enhanced penalties, Palmer was re-arrested. Following an evidentiary hearing, Palmer was released again, this time conditioned on electronic monitoring by the Miami-Dade County Corrections and Rehabilitation Department and on posting of a $100,000 bail bond.
On May 20, 2005, a representative of Universal, through Indiana Lumberman's Mutual Ins. Co., signed Palmer's appearance bond and posted the necessary funds. The appearance bond did not reference electronic monitoring, nor was it conditioned on any acts to be performed by any person or entity other than Palmer who agreed to appear before the circuit court to answer to trafficking charges:
KNOW ALL MEN BY THESE PRESENTS: That we, the above named defendant as principal [Palmer], and INDIANA LUMBERMENS MUTUAL *699 INSURANCE COMPANY, ... as surety, are held and firmly bound unto the Governor of the State of Florida ... in the sum of $100,000 ... for the payment whereof well and truly to be made we bind ourselves....
....
The condition of this obligation is ... that ... the said principal [Palmer] shall appear ... and shall submit to the said Court to answer the charge of cann traff [sic] only and shall submit to orders and process of said Court and not depart the same without leave....
On June 20, 2005, the Pretrial Services Bureau of the Corrections and Rehabilitation Department (PTS) advised the trial court that it had discovered over a month earlier that Palmer had removed his monitoring device and absconded but that it had forgotten to notify the court. PTS advised the court that it believed that Palmer had fled sometime between May 20 and May 24. An alias capias was issued and the bond was estreated.
Universal moved to set aside the estreature claiming that it had been irrevocably prejudiced by PTS' failure to notify the court or Universal of Palmer's actions. The motion and Universal's subsequent motion for rehearing were denied and a final order of forfeiture was entered.[1] Universal claims here that PTS' failure to timely notify the court that Palmer had absconded altered the terms of the bail contract, resulting in constructive discharge of Universal's obligations. See Reese v. U.S., 76 U.S. (9 Wall.) 13, 20-21, 19 L.Ed. 541 (1869). We do not agree.
The purpose of a bail bond is to assure that the defendant will comply with the conditions of the bail bond and appear or be produced by the surety before the court. See § 903.045, Fla. Stat. (2005) (a criminal surety bail bond "shall be construed as a commitment by and an obligation upon the bail bond agent to ensure that the defendant appears at all subsequent criminal proceedings and otherwise fulfills all conditions of the bond"); Wiley v. State, 451 So.2d 916, 922 (Fla. 1st DCA 1984). The theory underlying the appearance bond process is that release on bond commits the accused to the "exclusive custody of the surety," which guarantees the State that the accused will appear at subsequent hearings. Wiley, 451 So.2d at 922; Accredited Surety and Cas. Co., Inc. v. State ex rel. Hillsborough County, 383 So.2d 308, 308 (Fla. 2d DCA 1980) (confirming that the "surety guarantees the state that the accused will appear"); see Reese, 76 U.S. (9 Wall.) at 21, 19 L.Ed. 541 (stating that "the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing... [and] is so far placed in their power that they may at any time arrest him ... and surrender him to the court"). The obligation was, therefore, on Universal which assumed custody and control of Palmer following his release on bail to assure his compliance with the terms of *700 the bond which unconditionally guaranteed his appearance and to produce him before the court.
True, a bond is a three-party contract between the State, the accused, and the surety, and interference by the State with the surety's right to control the accused constitutes a substantial breach of the surety contract which discharges the surety. Fast Release Bail Bonds, Inc. v. State, 895 So.2d 448, 450 (Fla. 4th DCA 2005) (citing Bush v. Int'l Fid. Ins. Co., 834 So.2d 212, 214 (Fla. 4th DCA 2003)); Wiley, 451 So.2d at 922. But the State did not interfere with Universal's custody or control of Palmer. Rather, Miami Dade County's Department of Corrections and Rehabilitation Department simply failed in its independent duty to the trial court to assure Palmer's appearance via monitoring and supervision, a risk known and accepted by Universal when it issued its bail bond and became independently obligated to keep track of Palmer and to produce him in court.[2]See 10A John Alan Appleman & Jean Appleman, Insurance Law and Practice § 6117 (1981) ("The surety voluntarily assumes technical custody of the accused for the purpose of assuring that he appear before the court as required by the bond. This requires the surety to keep in active contact with the defendant, or, at least, to exercise a reasonable surveillance over him.") (footnotes omitted).
In this case, Palmer, not the State, violated the bond's conditions when he failed to appear. This was a risk the surety assumed for a fee when it agreed to guarantee his appearance. Accordingly, the order under review is affirmed.
NOTES
[1] Universal initially appealed from the order denying the motion to set aside the estreature. Following oral argument, we relinquished jurisdiction for the purpose of permitting appellants to either obtain a final judgment of forfeiture against the surety or for payment of the bond. See Al Estes Bonding, Inc. v. Pinellas County Bd. of County Comm'rs, 845 So.2d 254, 256 (Fla. 2d DCA 2003) (confirming that an order denying a motion to set aside an estreature is a non-final, non-appealable order that "may be reviewed by certiorari if the bond has been paid"); Chase v. Orange County, 511 So.2d 1101, 1102 (Fla. 5th DCA 1987) (dismissing without prejudice an appeal from an order denying a motion to set aside a bond estreature where entry of judgment on the forfeiture had been stayed). A final order has now been entered.
[2] Thus, we find inapplicable the cases relied on by the surety. See U.S. v. Aguilar, 813 F.Supp. 727, 728-29 (N.D.Cal.1993) (observing that the government materially increased the risk that the defendant would not appear for trial, where the bond was conditioned on the defendant's not leaving the jurisdiction yet the government, without the surety's knowledge or consent, permitted the defendant to travel outside the jurisdiction to assist in a drug investigation); Surety, Seneca Ins. v. State, 846 So.2d 1154, 1155 (Fla. 1st DCA 2003) (confirming that an "extra charge was a material change to the circumstances of the bond contract among the surety, the accused, and the state" and finding that the change, "being made without notice to, or the consent of, the surety, absolved the surety from liability on the contract"); American Bankers Ins. Co. v. Monroe County, 644 So.2d 560, 561-62 (Fla. 3d DCA 1994) ("Clearly, if the state wished to require the surety company to remain legally obligated on the bail bond after the conspiracy charge was added, it should have sought the surety company's express agreement to this substantial change in the original surety contract. This is so because surety contracts of this nature cannot be substantially amended without the express agreement of both parties to the contract.").