# Third District Court of Appeal

### State of Florida

Opinion filed December 2, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1998
Lower Tribunal No. F23-4170
_____

**Tom Roy Jenkins,**
Petitioner,

vs.

**State of Florida, et al.,**
Respondents.

A Case of Original Jurisdiction – Habeas Corpus

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for petitioner.

Ashley Moody, Attorney General, and Ivy R. Ginsberg, Assistant Attorney General, for respondent State of Florida.

Before EMAS, FERNANDEZ, and BOKOR, JJ.

PER CURIAM.

Tom Roy Jenkins petitions this Court for a Writ of Habeas Corpus, seeking release from pre-trial detention. We have jurisdiction. Fla. R. App. P. 9.030(b)(3); Fla. Const. Art. V, § 4 (b)(3). We grant the petition for writ of habeas corpus and remand to the trial court with directions to release Jenkins from pre-trial detention on the posted bond immediately.

## 1. FACTUAL AND PROCEDURAL BACKGROUND

Jenkins was charged with several felonies in connection with attempting to defraud an unrelated elderly person. The trial court set Jenkins' bond at $45,000 conditioned on a Nebbia[1] hold, and later reduced the bond amount to $24,000.

Jenkins' mother, Ms. Kelly, paid the 10% ($2,400) bond premium to Sunshine State Bail Bonds ("SSBB") from her social security check and some saved money. Because of the Nebbia hold, the bond was not processed.  In response, SSBB submitted a Nebbia package to the court, which included the mother's bank statements and other documentation, including a promissory note and indemnity agreement with SSBB and its surety.

---

[1] U.S. v. Nebbia, 357 F. 2d 303 (2d Cir. 1966) (standing for the proposition that a court can require a criminal defendant to establish, prior to posting bond, that the money and/or property used to pay the bond were not derived from illicit activities.

Over the course of several evidentiary hearings, SSBB maintained, through the testimony of its bond agent, that it had verified Ms. Kelly's income sources and was satisfied that the bond premium payment was from legitimate funds. The bond agent also confirmed that SSBB and its surety, Continental Heritage, were willing to accept the risk of non-payment knowing that Ms. Kelly had no substantial resources, and that SSBB was responsible for Jenkins's attendance at all court appearances.

Ms. Kelly testified to the sources of her income, which included her social security check, a debit card linked to her checking account, and some funds that were sent to her from friends and relatives after she made the bond premium payment. Jenkins' defense counsel contended that, as the record confirmed, the funds Ms. Kelly used to pay the bond premium were not derived from illegitimate sources, the Nebbia condition was satisfied.

The trial court denied the defense motion to lift the Nebbia hold. The trial court stated it was denying the motion because Jenkins' mother had no realistic ability to repay the $24,000 promissory note, and thus the circumstances of the bond were inadequate to ensure Jenkins's presence at trial. The trial court was also unconvinced that the funds Ms. Kelly received from friends and relatives, without more proof, were not illegitimate. Further, the trial court stated that the bond company's willingness to post a bond on

a promissory note and indemnity agreement without any collateral suggested "potential fraud," and denied releasing the <u>Nebbia</u> hold without prejudice to the defense providing additional information regarding the sources of the post-bond gift funds.

At the final <u>Nebbia</u> hearing, Jenkins' defense counsel submitted additional documentation, including an amended promissory note with an 18% interest rate and indemnity agreement, as well as affidavits from those who had gifted money to Ms. Kelly attesting to the legitimacy of the funds. Defense counsel asserted that the <u>Nebbia</u> condition was satisfied because the funds used to pay the bond were proven to be legitimate, and that whatever was leftover in Ms. Kelly's monthly bank account was irrelevant to the <u>Nebbia</u> analysis. The State, on the other hand, continued to maintain that the <u>Nebbia</u> requirement was not satisfied as Ms. Kelly did not have the funds to pay the promissory note at the 18% interest rate.

The trial court denied the defense motion to lift the Nebbia hold. In doing so, the trial court again cited Ms. Kelly's inability to pay the promissory note and expressed its lack of confidence in the legitimacy of the bond company for agreeing to post a ten-percent bond premium without any collateral for the promissory note.

## 2. STANDARD OF REVIEW

4

"A petition for writ of habeas corpus is the proper vehicle to challenge an order of pretrial detention or release." Hodges v. State, 327 So. 3d 923, 924 (Fla. 3d DCA 2021). Matters relating to the setting of bail and the conditions attached to a defendant's pre-trial release on bail are reviewed under an abuse of discretion standard. Martinez v. Jones, 348 So. 3d 1234, 1236 (Fla. 3d DCA 2022).

### 3. DISCUSSION

The record shows that the source of funds used to pay the appearance bond premium were legitimate, thus the purpose of Nebbia was satisfied.

We begin with the express premise of pretrial release as provided by Florida Rule of Criminal Procedure 3.131(a): "Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions." (emphasis added). That rule then provides, that unless the State has filed a motion for pretrial detention (which it did not in Jenkins' case), the trial court shall impose one or more of a list of release conditions that are reasonably calculated to assure his presence at trial. Fla. R. Crim. P. 3.131(b)(1); Casiano v. State, 241 So. 3d 219, 220 (Fla. 2d DCA 2018) ("[E]very accused has a constitutional right to pretrial release on

reasonable conditions, with two—and only two—exceptions. First, a person charged with a capital offense or an offense punishable by life imprisonment has no right to pretrial release if the proof of the accused's guilt is evident or the presumption that he or she committed the crime is great. Second, any accused may be detained if no conditions of release can reasonably protect the community from physical harm to persons, ensure the accused's presence at trial, or ensure the integrity of the judicial process.").

In this case, adding the <u>Nebbia</u> analysis to the presumption of the right to pretrial release does not alter the outcome.  Pursuant to <u>Nebbia</u> and its progeny, where a defendant posts bail or an appearance bond in cash, section 903.046(2), Florida Statutes (2024), authorizes the court to inquire into "the source of funds used to post bail" to ensure defendant's appearance. Specifically, section 903.046(2)(f) provides,

> When determining whether to release a defendant on bail or other conditions, and what that bail or those conditions may be, the court shall consider:
>
>     . . . .
>
> (f) The source of funds used to post bail <u>or procure an appearance bond</u>, particularly whether the proffered funds, real property, property, or any proposed collateral or bond premium <u>may be linked to or derived from the crime alleged to have been committed or from any other criminal or illicit activities.</u> The burden of establishing the noninvolvement in or <u>nonderivation from criminal or other illicit activity</u> of such proffered funds, real property, property, or any proposed collateral or bond premium

>falls upon the defendant or other person proffering them to obtain the defendant's release.

(emphasis added). That statute placed the burden on Jenkins to show that the funds used to post the appearance bond were legitimate and not derived from illegal activities. Jenkins established that the bond premium paid by his mother was not derived from illegal activity, and based on this record, the purpose of Nebbia has been satisfied.

Ms. Kelly's ability to pay the promissory note – if Jenkins fails to show up at every court date -- is not relevant to the Nebbia analysis. Her ongoing financial status has nothing to do with whether the funds used to post the appearance bond were derived from illegal sources, and verges on the proscription against pretrial detention merely for being indigent.

At the final Nebbia hearing, the trial court stated, "I don't believe that the bonds company is funding this with legitimate money because they can't make the money back," and suggested that the bond company was acting recklessly by providing bail for indigent defendants. We acknowledge that the trial court is within its discretion to inquire into the legitimacy of the surety. As explained in Nebbia, "[T]he right to bail does not prevent the court, in the exercise of a sound discretion, from rejecting sureties who, however honorable they may be, become sureties from purely business reasons and apparently without assuming any of the responsibilities which the law

7

imposes." <u>Nebbia</u>, 357 F.2d at 304 (quoting <u>United States v. Lee</u>, 170 F. 613, 615 (D.C. Ohio 1909)). Here, however, unlike the surety in <u>Lee</u>, SSBB made numerous record assurances under oath that it was obligated to ensure Jenkins' attendance at his court dates. <u>See</u> <u>Universal Bail Bonds, Inc. v. State</u>, 929 So. 2d 697, 699 (Fla. 3d DCA 2006) (the purpose of bail is to assure that the defendant will comply with the conditions of the bail bond and <u>appear or be produced by the surety</u> before the court); § 903.045, Fla. Stat. (2024) (a criminal surety bail bond "shall be construed as a <u>commitment by and an obligation upon the bail bond agent</u> to ensure that the defendant appears at all subsequent criminal proceedings and otherwise fulfills all conditions of the bond") (emphasis added); <u>Wiley v. State</u>, 451 So. 2d 916, 922 (Fla. 1st DCA 1984) ("The theory underlying the appearance bond process is that release on bond commits the accused to the 'exclusive custody of the surety,' which guarantees the State that the accused will appear at subsequent hearings'"); <u>Accredited Surety & Cas. Co. v. State ex rel. Hillsborough Cnty.</u>, 383 So.2d 308, 308 (Fla. 2d DCA 1980) (confirming that the "surety guarantees the state that the accused will appear"); <u>Reese v. United States</u>, 76 U.S. 13, 17 (1869) ("By a recognizance of bail in a criminal action the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is

8

subjected or can be subjected by them to constant imprisonment, but that he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court ").

In this case, the trial court's rationale deviates from the purpose of Nebbia. SSBB's and the surety's express assumption of risk in the record – both of non-payment and of Jenkins' non-appearance – have nothing to do with the legitimacy of the funds used to pay the appearance bond.

The trial court also suggested that SSBB was operating illegally because the note was executed without any requirement of collateral. However, section 648.442, Fla. Stat. (2024) provides that one of the acceptable forms of collateral security required by a bail bond agent is a promissory note, which Ms. Kelly executed with the surety. § 648.442, Florida Statutes (2024) ("Other acceptable forms of security or indemnity may consist of the following: (a) A promissory note[.]"). Further, and more to the point, Florida Rule of Criminal Procedure 3.131(b)(1)(B) authorizes the trial court to, among other conditions, require "execution of an unsecured appearance premium bond in an amount specified by the judge.") (emphasis added). Whether the promissory note executed by Ms. Kelly – after she paid the appearance bond – was secured by collateral or not, has nothing to do with the Nebbia analysis.

9

## 4. CONCLUSION

We conclude the requirement of <u>Nebbia</u> was satisfied when Jenkins affirmatively proved no illegitimate funds were used to pay the appearance bond. Because the trial court appears to have erroneously conflated the purpose of a <u>Nebbia</u> with other bail considerations, we conclude that denying release of the defendant after he satisfied the <u>Nebbia</u> requirement constitutes an abuse of discretion. Accordingly, we grant the petition for writ of habeas corpus and remand for the trial court to release Jenkins forthwith.

Petition For Writ of Habeas Corpus granted and remanded with directions.

This opinion shall take effect immediately notwithstanding the filing of any motion for rehearing or other post-decision motion.