## REESE v. UNITED STATES.

1. Where the condition of a recognizance of bail in a criminal action pending in a circuit court of the United States, provided that the party held to bail should appear for trial at the next regular term of the court, and *at any subsequent term thereafter*, the latter clause is construed to mean that the party shall appear at any subsequent term which may follow in regular succession in the course of business of the court, and not at any distant future term to which either party might be disposed to postpone the trial, without reference to any intervening term.

2. Where a stipulation was made between the parties to a criminal action (the government and the prisoner), and entered in the minutes of the court, to postpone the trial of the action until the determination of cases pending in another court; *held*, that the stipulation was inconsistent with the condition of a recognizance of bail, that the principal should appear for trial at any subsequent term following the then next term in regular succession; and that it released the principal from the obligation to appear at any such subsequent term.

3. Although the rights and liabilities of sureties on a recognizance are in many respects different from those of sureties on ordinary bonds or commercial contracts, yet their positions are similar in respect to the limitations of their liability to the precise terms of their contract, and the effect upon such liability of any change in those terms without their consent.

4. By a recognizance of bail in a criminal action the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is subjected or can be subjected by them to constant imprisonment, but that he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty.

5. This power of arrest can only be exercised within the territory of the United States; and there is an implied covenant on the part of the principal with his sureties, when he is admitted to bail, that he will not depart out of this territory without their assent. There is also an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way interfere with this covenant between them, or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.

6. Accordingly when in a criminal action a stipulation was made and entered in the minutes of the court, between the government and the defendant, who had given bail for his appearance for trial, that he might depart without the territory of the United States to a foreign country, and remain there until certain civil cases pending in another court were

finally disposed of, and such stipulation was made without the knowledge or assent of the sureties on the recognizance of bail, *held* that the sureties were released.

Error to the Circuit Court for the District of California; the case being thus:

In December, 1856, one Limantour was indicted at San Francisco by the grand jury of the Circuit Court of the United States for uttering and publishing as true, to the board of land commissioners created under the act of March 3d, 1851, to ascertain and settle private land claims in the State of California, a false writing, purporting to be a grant of certain described lands in California from the Mexican government, with intent to defraud the United States, knowing the same to be false. To this indictment Limantour appeared and pleaded not guilty. He was then admitted to bail, on motion of his counsel, the amount being fixed, by order of the court, at $30,000.

Soon after the issue was thus joined, a motion was made on the part of the United States to set the case for trial early in January, 1857. This motion was resisted, and at the same time application was made on the part of Limantour for a continuance of the cause, and in support of the application his affidavit was read, in which he asserted the genuineness of the grant alleged by the United States to have been forged, and that it was made at the time and by the officers as averred by him. For alleged perjury in making this affidavit the grand jury soon afterwards found a second indictment against him. To this indictment he also appeared and pleaded not guilty, and, upon the motion of his counsel, was admitted to bail, its amount being fixed at $5000.

By order of the court the recognizance of bail was taken in one instrument, the obligation of the sureties being the amount required in both cases. The defendant, Reese, and one Castro, became the sureties of Limantour, binding themselves jointly and severally in the sum designated. Upon this recognizance the United States brought suit; the present action. The recognizance recited the finding and presentment of the two indictments, the commitment of Limantour

thereon, and the order of the court for his discharge on furnishing the required bail, and was conditioned that Limantour should personally appear at the next regular term of the Circuit Court to be held in the city of San Francisco, *and at any subsequent term to be thereafter held in that city,* to answer all such matters and things as should be objected against him, and to abide the order of the court and not depart therefrom without leave first obtained. This recognizance was dated the 5th of February, 1857.

At the subsequent term of the Circuit Court, in August of that year, Limantour appeared and was ready and pressing for trial in both cases, with witnesses in attendance from the city of Mexico. The district attorney thereupon moved for a postponement of the trials. At this time two cases of Limantour for land claimed under alleged Mexican grants were pending in the District Court of the United States on appeal from decrees of the land commissioners, by whom the claims had been confirmed. One of the cases was for a claim under the alleged forged grant. The witnesses in attendance were persons who had been brought from Mexico to testify in the land cases, and they were obliged to return without delay. It was therefore stipulated between the district attorney and the counsel of Limantour, on the one side that the postponement desired by the government should be assented to, and on the other side that neither of the criminal actions should be brought to trial until after final decrees had been rendered in the two land cases by the District Court; and if both or either of the decrees were in favor of the claimant that the criminal actions should be dismissed by the United States; but if the decrees were adverse to the claimant that reasonable time should be given him to prepare for the trial of the criminal actions, and to procure the attendance of such of his witnesses as resided without the State of California. The stipulation was entered upon the minutes of the court, and the postponement desired was granted, by order of the court, in accordance with its terms.

*With this stipulation, the sureties on the recognizance had nothing to do in any way, and had, in fact, no knowledge of it.*

It was proved at the trial, without objection, that it was fully understood by all parties at the time that if the stipulation should be made, Limantour and his witnesses would return to Mexico and remain there until the civil cases in the United States District Court were finally disposed of, and that Limantour should afterwards have time enough allowed him to give notice to his witnesses and get them and return with them to San Francisco.

The result was that the witnesses of Limantour returned at once to Mexico, and after two or three months' delay Limantour followed them, and never returned to California.

In November, 1858, the District Court by its decrees rejected the claims of Limantour in both of the land cases, and soon afterwards the district attorney moved that the criminal actions be set for trial. After repeated adjournments the motion was finally argued and decided in March, 1859, and on the 26th of that month were set for trial for the 25th of April following. On this latter day the two actions were called, and Limantour was called in both, but he did not appear in either of them, and thereupon an order was entered forfeiting the recognizance of bail.

By stipulation of the parties the case was tried in the Circuit Court without the intervention of a jury, and that court gave judgment for the United States. The surety, Reese, accordingly brought the case here by writ of error.

*Mr. E. Casserly, in his behalf,* citing, and relying particularly upon *Rees* v. *Berrington,*\* and the English and American notes to it, as given in the Leading Cases in Equity,† in which case Lord Loughborough states that it was "the clearest and most evident equity not to carry on any transaction without the privity of him who must necessarily have a concern with the principal debtor," argued that though the recognizance here was, when taken, a valid obligation, yet that the sureties had been discharged by matter subsequently arising out of the written stipulation for a post-

---

\* 2 Vesey, 540.          † Vol. 3, pp. 819, 822, 827, 559, 560.

ponement of the criminal actions against their principal, Limantour, for a long and uncertain period, made, without their knowledge or privity in any way, between him and the United States, in August, 1857, and then entered as an order of court; and by the circumstances connected with the same.

*The Attorney-General, Mr. Hoar, submitted the case on the record,* which contained the opinion of the court below, in which the court observed on this particular point that the stipulation of August, 1857, though most unusual in all its features, might be justified.    The court said:

"The grant alleged to be forged, and in swearing to the genuineness of which the forgery was charged, had been adjudged valid by the board of land commissioners, and the appeal from its decree was at the time pending undetermined.    The postponement of the trial until this appeal was disposed of was a very proper exercise of the power of the court, provided the accused waived his right to a speedy trial and assented to the postponement.    In this act we do not perceive any ground upon which the bail can claim exemption from liability on their recognizance.    They were not bound to continue as sureties any longer from this circumstance than without it.    They could at any time afterwards have surrendered the defendant and been exonerated.    In the theory of the law he was in their custody, as jailers of his own choosing, subject to be surrendered at any moment.    If they failed to exercise their power over him they must bear the responsibility attached to the position they voluntarily assumed."

Mr. Justice FIELD, after stating the case, delivered the opinion of the court, as follows:

As a defence to this action the defendant relied in the Circuit Court upon several grounds, the principal of which were these:

First. That the acts charged in the two indictments did not, at the time of their alleged commission, constitute any offence under the laws of the United States; and, as a consequence, that the indictments and all proceedings there-

under, including the requiring of bail for the appearance of the party indicted, were void.

Second. That if the indictments and proceedings thereunder were not void, the stipulation of August, 1857, for a postponement of the trials, released the sureties from liability on their recognizance; and

Third. That the recognizance was void in embracing the amount required as bail upon both indictments.

The third ground here stated is not pressed in this court. The other two grounds are substantially the same which are urged here, differing only in their form of statement. Upon the first of these we express no opinion. Upon the second we are of opinion that the Circuit Court erred, and for reasons which may be briefly stated.

The condition of the recognizance provided for the personal appearance of Limantour at the then next regular term of the Circuit Court in San Francisco, and also at any subsequent term to be thereafter held in that city. It has been suggested that the provision for the appearance of the party at any term subsequent to that succeeding his arrest is unusual and invalid, but we do not pass upon the suggestion, and for the purposes of this case we shall treat the recognizance as unobjectionable in form. At the next regular term after its execution the party personally appeared with his witnesses and pressed the trial of the indictments. The first portion of the condition of the recognizance was thus complied with. The provision for his appearance at any subsequent term had reference to such subsequent term as might follow in regular succession in the course of business of the court. It was inserted to obviate the necessity of renewing the bail every time the cases were, from any cause, continued from one term to another. It was not intended to apply to any distant future term to which either party might be disposed to postpone the trials without reference to any intervening term. The principal and sureties by their recognizance covenanted with the United States that the principal should appear before the court and answer all such matters as might be objected against him at the next term, and from

term to term until the cases were disposed of; not that he should appear at the next term, and then at a term years later, depending for its designation upon the happening of a contingent event.

The stipulation in this case was for a postponement of the trial of the criminal actions for a period of uncertain duration; until final decrees should be rendered by the District Court of the United States in certain cases pending on appeal from the board of commissioners created under the act of March 3d, 1851, to ascertain and settle private land claims in the State of California. Cases on appeal from that board were not heard upon the record transmitted to the court, and therefore were not subject to be disposed of whenever they could be argued. They were tried anew upon the testimony and proceedings had before the board and such further testimony as might be produced by the parties in the District Court.* The proceedings in the court advanced slowly when new testimony was produced, as it was required to be taken in writing and by question and answer. Independent of this circumstance it was difficult to anticipate the period which any case, meeting with opposition and seriously contested, would occupy. The difficulty of determining in advance the duration of litigated proceedings, which exists in all cases, was increased with respect to Mexican land cases, appealed from the board to the District Court of the United States, by a variety of causes; among others, from the manner in which the testimony was taken, as already stated; the necessity of looking into the archives of the former department of California, and sometimes of the supreme government at the city of Mexico; of examining Mexican witnesses, ignorant of our language, and of interpreting Mexican and Spanish usages, ordinances, and laws. In the cases of the city of San Francisco and of the city of Sonoma,† the appeals were pending in the District Court for over eight years. These cases of Limantour involved lands in the city of San Francisco

* United States *v.* R tchie, 17 Howard, 533; Grisar *v.* McDowell, 6 Wal lace, 375.

† 8 Wallace, 684.

and adjoining it, covered with buildings and expensive and permanent improvements, which were of the value of many millions. His claims were, for this reason, as well as their supposed fraudulent character, vigorously contested, not only by the United States, but by citizens of San Francisco, acting in concert with the district attorney. A final disposition of them until after the lapse of many months, and perhaps of several years, could not, therefore, have been reasonably anticipated.

The stipulation to postpone the trials until after such final disposition was inconsistent with the condition of the recognizance. It released Limantour from the obligation of appearing at any subsequent term following the then next term in regular succession. It substituted for it an agreement that he need not appear at any such subsequent term, but only at such term as might be held after the happening of an uncertain and contingent event. The stipulation, in other words, superseded the condition of the recognizance.

This will readily appear if we consider the condition, which, subsequent to that stipulation, must have been exacted in a new recognizance, if the sureties on the present recognizance had surrendered their principal. It could not have been for the appearance of the defendant at the next regular term thereafter, or any succeeding term, for such a condition would have been inconsistent with the stipulation. It could only have been for his appearance at such term as might be designated by the district attorney or the Circuit Court, after the final decrees were rendered by the District Court in certain land cases pending therein on appeal from the board of land commissioners; provided always, that such decrees were against the claimant; and provided further, that the term designated allowed reasonable time to the defendant to prepare for trial, and to procure the attendance of witnesses residing out of the State. It requires no argument to show that a condition like this would be a very different one from that embodied in the existing recognizance.

If, now, we apply the ordinary and settled doctrine, which

controls the liabilities of sureties, it must follow that the sureties on the recognizance in suit are discharged. The stipulation, made without their consent or knowledge, between the principal and the government, has changed the character of his obligation; it has released him from the obligation with which they covenanted he should comply, and substituted another in its place.

It is true, the rights and liabilities of sureties on a recognizance are in many respects different from those of sureties on ordinary bonds or commercial contracts. The former can at any time discharge themselves from liability by surrendering their principal, and they are discharged by his death. The latter can only be released by payment of the debt or performance of the act stipulated. But in respect to the limitations of their liability to the precise terms of their contract, and the effect upon such liability of any change in those terms without their consent, their positions are similar. And the law upon these matters is perfectly well settled. Any change in the contract, on which they are sureties, made by the principal parties to it without their assent, discharges them, and for obvious reasons. When the change is made they are not bound by the contract in its original form, for that has ceased to exist. They are not bound by the contract in its altered form, for to that they have never assented. Nor does it matter how trivial the change, or even that it may be of advantage to the sureties. They have a right to stand upon the very terms of their undertaking.

There is also another view of the stipulation which leads to the same result. By the recognizance the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty. This power of arrest can only be exercised within the territory of the United States; and there is

an implied covenant on the part of the principal with his sureties, when he is admitted to bail, that he will not depart out of this territory without their assent. There is also an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way interfere with this covenant between them, or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.

The stipulation in this case was made with the distinct understanding of the parties, that upon its execution Limantour and his witnesses would return to Mexico, and would remain there until the civil cases in the District Court were finally disposed of, and that he should afterwards have time allowed him to obtain his witnesses and return to this country with them. The government thus consented that Limantour might depart out of the territory of the United States to a foreign country, where it would be impossible for the bail to exercise their right to arrest and surrender him; and further, it consented that he might remain abroad for a period of indefinite duration. This was all done without the concurrence or even knowledge of the sureties, whose risks were thus greatly increased.

It would be against all principle and all justice to allow the government to recover against the sureties for not producing their principal, when it had itself consented to his placing himself beyond their reach and control.*

Judgment REVERSED, and the cause remanded for a new trial.

---

* Rathbone *v.* Warren, 10 Johnson, 587, 589; Niblo *v.* Clark, 3 Wendell, 24, 27; S. C. on error, 6 Wendell, 236, 245; Bowmaker *v.* Moore, 7 Price, 228, 231, 234; S. C., 3 Price, 214.