**UNITED STATES of América, Plaintiff,**

**v.**

**Jesus AGUILAR, Defendant.**

**No. CR-91-0526-SAW.**

United States District Court,
N.D. California.

Feb. 23, 1993.

Jeffrey Lawrence, U.S. Attys. Office, San Francsico, CA, for plaintiff.

Jack Morgan, Pacifica, CA, for defendant.

## MEMORANDUM AND ORDER

WEIGEL, District Judge.

### I. BACKGROUND

On August 29, 1991, Defendant Jesus Aguilar was indicted for conspiracy and possession with intent to distribute heroin. On October 3, 1991, he was released from custody on a $100,000 property bond after his family members (the "Sureties") posted their home as security. On October 24, 1991, Defendant pled guilty to the charges brought against· him. Sentencing was scheduled for January 9, 1992, but Defendant failed to appear. On May 14, 1992, the Court granted Plaintiff's motion for judgment forfeiting bail.

The Sureties—Defendant's mother, father, sister, and brother-in-law—move to set aside and remit the bond forfeiture. The government opposes the Sureties' motion.

### II. DISCUSSION

■ A district court may set aside a bond forfeiture if the government's actions materially increase the risk of the surety without its knowledge and consent. *United States v. Galvez–Uriarte,* 709 F.2d 1323, 1324 (9th Cir.1983); *Reese v. United States,* 76 U.S. (9 Wall.) 13, 21–22, 19 L.Ed. 541 (1869). A district court may also set aside a bond forfeiture if justice does not require the forfeiture. *United States v. Minor,* 846 F.2d 1184, 1190 (9th Cir.1988); Fed.R.Crim.P. 46(e)(2). The Sureties contend that under both standards, the judgment forfeiting bail should be set aside. For the reasons set forth below, the Sure-

ties' contention is well-taken; therefore, the bond forfeiture must be set aside.

### A. *Material Increase of Sureties' Risk*

■ One of the conditions under which the Sureties posted bail was that Defendant could not travel outside of the Northern District of California.[1] On November 5, 1991, however, Magistrate Judge Brazil permitted Defendant to travel to the Central District of California from November 13 to 17, 1991 "in connection with [Defendant's] investigation in cooperation with the Department of Justice." Defendant's trip to the Central District allegedly was in connection with a plea agreement entered into between Defendant and the government on October 24, 1991.

The Sureties assert that because the plea agreement and Defendant's trip to the Central District "altered the terms of the original agreement and significantly increased the likelihood that [D]efendant would not again appear before the court," the Court should set aside the bond forfeiture.

The government argues that the bond forfeiture should not be set aside because the cases upon which the Sureties rely do not apply in this instance because Defendant, while leaving the Northern District, did not leave the country. *See, e.g., Galvez–Uriarte,* 709 F.2d at 1325 (bond forfeiture must be set aside where government authorized defendant to go to Mexico, in contravention of bond terms); *Reese,* 76 U.S. at 21–22 (same). Rather, the government asserts that this case is akin to *Stuyvesant Ins. Co. v. United States,* 410 F.2d 524 (8th Cir.1969), in which the court refused to set aside the bond forfeiture even though the government had authorized the defendant to leave the Eastern District of Missouri.

The government's position is not well-taken. First, the reasoning which underlies *Reese* and *Galvez–Uriarte* is not limited to situations in which defendants leave the country. Rather, the essence of these

---

1. The bond provides that "Defendant shall not travel outside the Northern District of California, that is, these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, San Francisco, San Mateo, Santa Clara, Santa Cruz, and Sonoma."

cases is that if the government materially increases the risk of the surety, without its notice and consent, the bond forfeiture must be set aside. The risk to the surety can be materially increased even if the defendant does *not* leave the country. *See, e.g., State v. Weissenburger*, 189 N.J.Super. 172, 459 A.2d 693 (1983); *People v. Smith*, 645 P.2d 864 (Colo.App.1982); cf. *Allstate Ins. Co. v. American Bankers Ins. Co.*, 882 F.2d 856 (4th Cir.1989).

Second, *Stuyvesant* is distinguishable from the facts in this case. The bond in *Stuyvesant*, unlike the bond herein, expressly provided that "defendant is not to depart the Eastern District of Missouri ... *except in accordance with such orders ... as may be issued by ... the United States District Court.*" *Stuyvesant*, 410 F.2d at 526. Thus, defendant's leaving the Eastern District by authorization of the court did not contravene the bond agreement. Further, the *Stuyvesant* court involved a compensated surety, which is "not favored by the law." *Id.* at 525–26 & n. 6. The Sureties herein are personal sureties, who posted their home as security solely to allow Defendant to be released from jail. They were never compensated.

The facts of this case are far more similar to *Weissenburger*, 189 N.J.Super. 172, 459 A.2d 693, in which the surety executed a bail bond conditioned upon the defendant's not leaving the jurisdiction. After the bond's execution, the defendant entered into a plea agreement with the government, in which the charges against the defendant were dropped and defendant was permitted to relocate, in exchange for de-

fendant's agreeing to assist the government in obtaining evidence against suspected drug distributors. The surety was never advised of the plea agreement. After assisting the government in one investigation, the defendant fled the jurisdiction. The court held that because the subsequent change in the bond agreement materially increased the surety's risk of defendant's nonappearance, the bond forfeiture must be set aside. *Weissenburger*, 189 N.J.Super. at 176–77, 459 A.2d 693.

Likewise, after the bond was executed between the Sureties and the government, Defendant and the government entered into a plea agreement in which Defendant "agreed to testify against his suppliers ... and to assist in future narcotics investigations." Decl. of Special Agent Paul Rozario, at 2. Subsequently, the government permitted Defendant to travel to the Central District of California to "try to meet with some cocaine traffickers in Long Beach." *Id.* The Sureties were never advised of these agreements; in fact, the Sureties were prevented from learning about the plea agreement because it was filed under seal. As a result of the government's agreements with Defendant, Defendant was authorized to engage in the dangerous activity of assisting the government with narcotics investigations outside of the Northern District. The government therefore materially increased the risk that Defendant would not appear for trial, without the Sureties' knowledge or consent.[2] Accordingly, the bond forfeiture should be set aside.[3] *See Weissenburger*, 189 N.J.Super. at 177, 459 A.2d 693 (bond forfeiture must

2. The Sureties submitted signed declarations stating that had they known that Defendant was going to the Central District to meet with drug traffickers, they would have withdrawn their pledge of the home. *See* Decls. of Hector De Alba, Araceli De Alba, Irene Aguilar, and Jesus Aguilar Sr., at 3 ("I would rather that [Defendant] wait in trial or sentencing in jail, rather than endangering himself and our family.")

3. The government contends that the Sureties were aware that Defendant had left the Northern District because he had been authorized to do so on a prior occasion, and because Defendant lived with the Sureties at the time that he travelled. The government's contention is not well-taken. The fact that Defendant lived with

the Sureties just prior to his leaving the Northern District does not prove that the Sureties were aware that Defendant had left the district. Furthermore, although the government permitted Defendant to leave the Northern District in October of 1991, he did so to visit relatives. At best, the authorization to leave in October shows that the Sureties knew that Defendant may again be permitted to leave the Northern District to visit relatives. This is different, however, than a trip outside the district in which Defendant was authorized to meet with cocaine traffickers. While visiting relatives does not materially increase the Sureties' risk, assisting the government in drug investigations does.

be set aside if authorization to leave jurisdiction increased the surety's risk, regardless of whether defendant ultimately exercised discretion properly).

This conclusion is buttressed by the Restatement of the Law of Security § 128(a), which provides: "Where, without the surety's consent, the principal and the creditor modify their contract otherwise than the extension of time of payment ... the surety, other than a compensated surety, is discharged unless the modification is of a sort that can only be beneficial to the surety." The Sureties here are uncompensated, and the modification of the bond agreement was not beneficial to them, but rather increased the risk that Defendant would not appear for trial. *See Allstate Ins. Co.*, 882 F.2d at 861–62.

### B. Federal Rule of Criminal Procedure 46(e)(2)

 As noted above, a district court may also set aside a bond forfeiture if it appears that justice does not require the forfeiture. Fed.R.Crim.P. 46(e)(2). The district court has wide discretion in determining whether to grant relief from a forfeiture. *United States v. Stanley*, 601 F.2d 380, 382 (9th Cir.1979). Among the factors a court may consider are the "willfulness of defendant's breach, any explanation or mitigating circumstances, whether the sureties were professionals or defendant's friends and family members, the participation of the sureties in apprehending defendant, the appropriateness of the bond amount, and the cost, inconvenience or prejudice to the government." *Minor*, 846 F.2d at 1190.

The willfulness of Defendant's breach cannot be ascertained because he has not been seen or heard from since he was permitted to travel to the Central District in November of 1991. Nor can the Court determine whether Defendant has an explanation for his disappearance. Although the government has made no showing of cost, inconvenience, or prejudice incurred because of Defendant's disappearance, it is assumed that the government has been

harmed. However, such harm is due to no action by the Sureties. The government could have avoided the risk that the bond forfeiture would be set aside simply by adhering to the terms of the bond. Furthermore, the Sureties are not professionals, but Defendant's family members. They have done what they can to apprehend Defendant.[4] Because, on balance, the equities favor the Sureties, the bond forfeiture should also be set aside under Rule 46(e)(2).

Accordingly, IT IS HEREBY ORDERED that the Sureties' Motion to Set Aside and Remit Bond Forfeiture is GRANTED.

---

4. The Sureties filed a missing person report with the Los Angeles police department.