[No. B239848. Second Dist., Div. Four. Jan. 30, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
WESTERN INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Robert Tomlin White for Defendant and Appellant.

John F. Krattli, County Counsel, Ruben Baeza, Jr., Assistant County Counsel, and Liliana Campos, Deputy County Counsel, for Plaintiff and Respondent.

Oᴘɪɴɪᴏɴ

MANELLA, J.—

## INTRODUCTION

Western Insurance Company (Western), the corporate surety on a $200,000 bail bond, appeals from an order denying its motion to vacate forfeiture and exonerate bail. Western contends the bail bond should be exonerated because the trial court materially increased the surety's risk beyond the terms of the bond agreement when the court permitted the defendant and principal, Chester Vidal Dizon, to leave the United States for the Philippines without Western's knowledge or consent. We agree, and accordingly, reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 10, 2010, the Los Angeles County District Attorney filed a felony complaint charging Dizon with two counts of committing a lewd act upon a child, in violation of Penal Code section 288, subdivision (a).[1] Dizon was ordered held to answer, and bail was set at $200,000.

On August 11, 2010, Western, through its agent, Two Jinn, Inc., doing business as Aladdin Bail Bonds, posted the $200,000 bond. The bond agreeent between Western and Dizon provided: "Now the Western Insurance Company, a Nevada Corporation, hereby undertakes that the above-named defendant [(Dizon)] will appear in the above-named court on the date above set forth to answer any charges in any accusatory pleading based upon the acts supporting the complaint filed against him/her and as duly authorized amendments thereof, in whatever court it may be filed and prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment or grant of probation; or if he/she fails to perform either of these conditions, that the Western Insurance Company, a Nevada Corporation, will pay the people of the said State the sum of ***Two Hundred Thousand Dollars And No Cents***."[2]

On November 19, 2010, Dizon requested permission to travel to the Philippines to attend his mother's funeral. The prosecutor did not oppose the request. The court granted Dizon permission to leave the country on November 21 and return November 29; it further ordered Dizon to appear for trial on

---

[1] All further statutory citations are to the Penal Code.

[2] This language is substantially similar to the language mandated by section 1278.

November 30. Western was not informed that Dizon had requested permission to travel to the Philippines, or that the trial court had granted him permission to leave the United States.

On November 30, 2010, Dizon failed to appear for trial. Dizon's counsel represented that Dizon was ill and hospitalized in the Philippines. The trial court issued a bench warrant, and ordered the bail forfeited. Notice of forfeiture of the bail bond was mailed to Western, informing it that unless the order of forfeiture was set aside within 185 days, summary judgment would be entered pursuant to section 1306.

On June 1, 2011, Western moved to extend the 185-day bail bond forfeiture period to allow Western more time to locate and apprehend Dizon. The motion was granted, and the forfeiture period was extended to December 20, 2011.

On December 20, 2011, Western filed a motion to vacate forfeiture and exonerate the bail bond. Western contended, among other grounds, that the trial court had substantially increased Western's risk by not informing it of Dizon's request to travel to the Philippines, or of the court order granting him permission to travel outside the United States. Western noted that it was not provided an opportunity to surrender Dizon before he travelled to the Philippines, and that the trial court had made it practically impossible for Western to perform its contractual obligations under the bond agreement.

In support of its motion, Western attached a declaration of Douglas Creer, an investigator retained by Western. Creer stated he was a retired Department of Homeland Security special agent, with over 28 years of experience in law enforcement. Creer stated he had retained a local private investigator in the Philippines to assist him in locating Dizon. However, the two men had been unsuccessful, because (1) "[u]nlike similar fugitives [who] have fled to the Philippines and who generally lacked a support system, [Dizon] has considerable family ties and friends that have been providing support to [him]"; (2) the investigation had been significantly hindered due to bad weather and poor roads in areas the defendant had been known to frequent; and (3) the local enforcement officers in those areas were not cooperating. Creer opined that if Dizon had fled to another part of California or the United States, he or another investigator would have been able to locate and surrender Dizon to the court.[3]

---

[3] The People filed no written opposition to Western's motion to vacate forfeiture and exonerate the bond. On appeal, respondent does not contend Western had notice that Dizon had requested or received permission to leave the United States. Indeed, respondent argues that "[t]here was no need to 'notify' the bail agent or the SURETY of the Court's November 19, 2010 Order allowing [Dizon] to travel to the Philippines." Similarly, at the hearing on

At the January 19, 2012 hearing on Western's motion to vacate forfeiture and exonerate the bail bond, Western's counsel represented that "there's no way our company would have agreed" to allow Dizon to travel to the Philippines. Counsel also stated: "If the court wanted to allow him to go to the Philippines and trusted him to, then we should [have] be[en] allowed to return our bond, maybe even return the premium if that was the issue, and the court could have OR'ed him or something to that effect to allow him to go to the Philippines." Noting the absence of a published California case squarely addressing the issue, the superior court denied Western's motion. On January 27, 2012, the court entered summary judgment on the forfeited bond in favor of the County of Los Angeles.

On March 16, 2012, Western timely filed its notice of appeal.

## DISCUSSION

"An order denying a motion to vacate or set aside a forfeiture and exonerate the bail is an appealable order. [Citation.] The resolution of such a motion 'is within the trial court's discretion and should not be disturbed on appeal unless an abuse of discretion appears in the record.' [Citations.]" (*People v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, 151 [92 Cal.Rptr.3d 516], fn. omitted.) " 'The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] . . .' [¶] The standard of review, therefore, compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond." (*County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263].) The surety has the burden of proof in a motion to set aside a forfeiture. (*County of Los Angeles v. Nobel Ins. Co.* (2000) 84 Cal.App.4th 939, 944–945 [101 Cal.Rptr.2d 320].)

■ "The basic scheme as to bail is almost absurdly simple. The defendant can post a sum of money with the court to be forfeited if he shall not make himself available at all proper times in connection with the legal process. Very often he will seek out a bailbondsman, who posts an undertaking by means of which a corporate surety agrees to pay the set sum if

Western's motion, the trial judge stated, "I don't believe that the law currently requires the court to notify the surety every time there's a request to travel by somebody that's posted bail." In addition, the reporter's transcript and the clerk's transcript show that no one representing Western was present at the hearing during which the trial court granted Dizon permission to travel to the Philippines. In short, nothing contradicts Western's assertion that it had no notice Dizon had requested or received permission to leave the United States. As Western did not have notice, it could neither have consented to Dizon's travel nor surrendered him.

defendant does not properly appear. The cash, the undertaking, and the bondsman himself are each referred to as bail [citation]." (*People v. Amwest Surety Insurance Co.* (1980) 105 Cal.App.3d 51, 53–54 [164 Cal.Rptr. 159].) "When a person for whom a bail bond has been posted fails without sufficient excuse to appear as required, the trial court must declare a forfeiture of the bond. [Citation.] The surety that posted the bond then has a statutory 'appearance' period in which either to produce the accused in court and have the forfeiture set aside, or to demonstrate other circumstances requiring the court to vacate the forfeiture. If the forfeiture is not set aside by the end of the appearance period, the court is required to enter summary judgment against the surety. [Citation.]" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 [16 Cal.Rptr.3d 76, 93 P.3d 1020], fn. omitted.)

■ As courts have noted, the bail bond agreement is a contract involving three parties. First, it is a contract between the surety and the principal. Under the terms of the bail bond agreement, "the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty." (*Reese v. United States* (1869) 76 U.S. 13, 21 [19 L.Ed. 541] (*Reese*).) Second, "the 'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.' [Citation.]" (*People v. American Contractors Indemnity Co., supra,* 33 Cal.4th at p. 657.)

■ Since the 19th century, the United States Supreme Court has recognized that because the power to arrest a principal can be exercised only within the territory of the United States, "there is an implied covenant on the part of the principal with his sureties, when he is admitted to bail, that he will not depart out of this territory without their assent. There is also an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way interfere with this covenant between them, or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him." (*Reese, supra,* 76 U.S. at pp. 21–22.) Accordingly, a surety is discharged from its liability under the bail bond agreement if the government, without the surety's consent or knowledge, materially increases the surety's risks. (*Id.* at p. 22.) Similarly, the California Supreme Court has held that a surety's obligation was exonerated where the state delayed, hindered and rendered practically impossible the performance of the surety's obligations under the bail bond agreement. (*People v. Meyers* (1932) 215 Cal. 115, 120 [8 P.2d 837].)

■ In *Reese*, the Supreme Court reversed a judgment in favor of the United States after bail was forfeited when the defendant did not return from Mexico. (*Reese, supra*, 76 U.S. at p. 22.) The court noted that the prosecutor and the defendant had stipulated to, and the trial court had granted, a delay in trial, with the understanding that the defendant would go to Mexico during the postponement. "This was all done without the concurrence or even knowledge of the sureties, whose risks were thus greatly increased." (*Ibid.*) The court held that "[i]t would be against [all] principle and all justice to allow the government to recover against the sureties for not producing their principal, when it had itself consented to his placing himself beyond their reach and control." (*Ibid.*)

■ The continuing validity of *Reese* was recognized over a century later in *U.S. v. Galvez-Uriarte* (9th Cir. 1983) 709 F.2d 1323 (*Galvez-Uriarte*). There, the prosecutor provided a letter allowing the defendant, a Mexican citizen, to leave the United States. (*Id.* at p. 1324.) Finding the case controlled by *Reese*, the Ninth Circuit reversed an order denying the surety's motion to set aside the bond forfeiture, holding that "[a]ny Government action that substantially encourages the defendant to leave the country in violation of the terms of the bond is a material breach of the Government's implied covenant not to interfere with the covenant between the defendant and the surety." (*Id.* at p. 1325.)

Similarly, in *U.S. v. Aguilar* (N.D.Cal. 1993) 813 F.Supp. 727 (*Aguilar*), the district court set aside a bond forfeiture after a magistrate judge had permitted the defendant to travel outside the court's jurisdiction, finding that action "materially increased the risk that Defendant would not appear for trial, without the Sureties' knowledge or consent." (*Id.* at p. 729.) The court noted that "[t]he risk to the surety can be materially increased even if the defendant does *not* leave the country." (*Ibid.*, citing cases.)

The People attempt to distinguish *Aguilar* and *Galvez-Uriarte* on the grounds that those cases involved bonds with express commitments by the principals not to leave the country. The distinction is unpersuasive, as the United States Supreme Court has made clear that *every* bond carries with it "an implied covenant on the part of the principal . . . that he will not depart [the] territory without [the surety's] assent," as well as "an implied covenant on the part of the government . . . that it will not in any way . . . increase the risks of the [surety] . . . ." (*Reese, supra*, 76 U.S. at p. 22.) Here, Western met its burden of showing that the court order permitting Dizon to travel to the Philippines was made without its consent or knowledge, and materially increased its risks under the bail bond agreement. In particular, the unchallenged declaration of Creer established that Western made a good faith effort to locate and apprehend Dizon in the Philippines, but was prejudiced by the

court order permitting Dizon to travel outside the United States. The order put Dizon out of reach of the surety and of domestic law enforcement agencies. It permitted him to disregard the court's directive to return, with little chance of apprehension. And significantly, it denied Western the opportunity to exercise its statutory right to surrender Dizon to the custody of the court, rather than incur the very real risk that he would not return and the bond would be forfeited. (See § 1300, subd. (a).) The actions of the court thus breached the government's obligation not to materially increase the risk to the surety without notice.

The People argue that Western is not entitled to exoneration because (1) there is no statutory right to exoneration under section 1305; (2) Western was aware that Dizon was a naturalized Filipino and that it might be difficult to locate him in the Philippines before it posted the bail bond; and (3) the express terms of the bail bond agreement—that the principal would "hold him/herself amenable to the orders and process of the court"—encompassed the request and order. We disagree.

■ First, it has long been the law that the remedies provided in section 1305 for exoneration of a bond forfeiture under certain conditions are not exclusive. (*People v. McReynolds* (1894) 102 Cal. 308, 312 [36 P. 590].) Thus, a surety may be entitled to exoneration of a bond where circumstances outside those set forth in section 1305 exist. (See, e.g., *People v. North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 675 [111 Cal.Rptr. 757] [bail exonerated despite failure of defendant to appear for execution of judgment, where surety fulfilled its obligations under §§ 1195 and 1459]; *People v. Surety Ins. Co.* (1983) 139 Cal.App.3d 848, 854 [189 Cal.Rptr. 89] [bail exonerated where surety was not notified pursuant to § 1303 that bail was transferred to a new complaint]; *People v. Resolute Ins. Co.* (1975) 50 Cal.App.3d 433, 434, 437 [123 Cal.Rptr. 246] [bail exonerated where surety was not notified pursuant to § 1303 that bail was transferred from complaint to indictment].)

Second, although Western knew or should have known of Dizon's birthplace, citizenship status and the difficulties inherent in locating a person in the Philippines, Western cannot be imputed with the knowledge that Dizon would request—or that the court would grant him—permission to travel to the Philippines. Imputing such knowledge would decrease the willingness of sureties to post bail for criminal defendants who are naturalized citizens, and "undermine the Legislature's carefully constructed statutory [bail] scheme." (*People v. Fairmont Specialty Group, supra,* 173 Cal.App.4th at p. 155.)

Finally, we reject the People's argument that the bail bond agreement encompassed the court order at issue. Dizon's agreement to be "amenable to

the orders and process of the court," in no way authorized him to request permission to leave the country without informing the surety. As the United States Supreme Court has noted, to do so would be a breach of the implied covenant between the principal and the surety. (*Reese, supra,* 76 U.S. at p. 21.) More important, that contractual provision does not constitute consent by the surety to a court order permitting the principal to leave the country without notice to the surety.

■ Because Western has satisfied its burden of showing that the court order permitting Dizon to leave the United States materially increased its risk under the bail bond agreement, we conclude the trial court abused its discretion in denying the motion to vacate the forfeiture and exonerate the bond.

## DISPOSITION

The judgment denying Western's motion to vacate the forfeiture and exonerate the bond are reversed. The forfeiture is vacated and the bond exonerated. Western shall recover its costs on appeal.

Epstein, P. J., and Suzukawa, J., concurred.

A petition for a rehearing was denied February 20, 2013, and the opinion was modified to read as printed above.