Filed 3/9/16  P. v. The North River Ins. Co. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THE NORTH RIVER INSURANCE COMPANY,<br><br>    Defendant and Appellant;<br><br>BAD BOYS BAIL BONDS,<br><br>    Real Party in Interest and Appellant. | D067847<br><br><br>(Super. Ct. No. 37-2015-00006389-CU-EN-CTL) |

APPEAL from an order and judgment of the Superior Court of San Diego County, Kathleen M. Lewis and David J. Danielsen, Judges.  Appeal from order, affirmed; appeal from judgment, dismissed.

Jefferson T. Stamp for Defendant, Appellants, and Real Party in Interest.

Thomas E. Montgomery, County Counsel, and Walter J. DeLorrell III, Deputy County Counsel, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant surety, The North River Insurance Company (North River), and its bail agent, real party in interest Bad Boys Bail Bonds (Bad Boys) (collectively, "appellants"), appeal from an order denying Bad Boys's motion to vacate the forfeiture of a bail bond and to exonerate the bond, and the ensuing summary judgment entered against North River on the bond. Appellants claim that the trial court erred in denying the motion to vacate for two reasons. First, appellants contend that a plea agreement in the underlying criminal case and the People's stipulation to a deferred sentencing date at the plea hearing, changed the bail bond contract and thereby discharged North River of its obligation on the bond. In addition, appellants contend that the trial court erred in determining that North River was not entitled to discharge of its obligations on the bond on the ground that the plea agreement and the stipulation to defer sentencing materially increased North River's risk on the bond. We reject both of these contentions and affirm the order denying the motion to vacate the forfeiture of the bail bond and exonerate the bond. For reasons we explain in part III.A., *post*, we dismiss the appeal from the summary judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 4, 2013, the People filed a complaint charging Thach Dang with willful infliction of corporal injury to a spouse or roommate (Pen. Code, § 273.5)[1] (count 1), attempting to dissuade a witness from reporting a crime (§ 136.1, subd. (b)(1)) (count 2), vandalism under $400 (§ 594, subds. (a), (b)(2)(A)) (count 3), and cruelty to a child by inflicting injury (§ 273a, subd. (b)) (count 4). The complaint also alleged that Dang had previously suffered two serious felony priors (§§ 667, subd. (a)(1), 668, 1192.7 (c)), and two strike priors (§§ 667, subds. (b)-(i), 1170.12, 668). That same day, Dang was taken into custody and the trial court set bail at $75,000.

Three days later, Bad Boys, acting as a bail agent for North River, posted a bail bond on behalf of Dang in the amount of $75,000. The bond provides that, if convicted, Dang will appear for pronouncement of judgment. The bond further provides that if Dang fails to perform this condition, North River will pay $75,000. The bond also states that, "[i]f the forfeiture of this bond be ordered by the Court, judgment may be summarily made and entered forthwith against [North River] for the amount of its undertaking herein as provided by Sections 1305 and 1306 of the Penal Code."[2]

Dang and the People entered into a plea agreement on September 23, 2013 in which Dang agreed to plead guilty to count 1 and to admit having suffered one prior

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

[2]     These statutes outline the process by which bail may be forfeited.

3

serious felony conviction and one prior strike conviction, in exchange for the dismissal of the balance of the charges and the People's agreement to a nine-year stipulated sentence. The plea agreement further provided that the maximum term of imprisonment that could result from Dang's plea was 13 years, and stated that if "[Dang] willfully fail[ed] to appear for . . . [the] sentencing hearing," he would "not be allowed to withdraw [his] guilty . . . plea[ ]," and would be "sentenced unconditionally." The trial court held a plea hearing and accepted the guilty plea that same day.

At the conclusion of the plea hearing, defense counsel indicated that the People had stipulated to a November 21, 2013 sentencing date. The court informed Dang that he had a right to be sentenced on October 22, 2013, and asked whether he was willing to waive this right in order to permit sentencing to occur on November 21. Dang responded in the affirmative.

Dang failed to appear for sentencing on November 21. The court ordered the bail bond forfeited that day.

Bad Boys filed an amended notice of motion and motion to vacate forfeiture and exonerate the bond on January 13, 2015.[3] Bad Boys supported its motion with a brief, together with several exhibits and a declaration from an investigator whom it had retained in an attempt to locate Dang.

Ten days later, Bad Boys filed a supplemental brief in support of its motion, as

_____

[3]   Although North River and Bad Boys filed a notice of motion to vacate forfeiture and exonerate the bond on December 29, 2014, it does not appear from the record that any accompanying motion was filed with this initial notice.

4

well as an additional declaration and additional supporting exhibits.  In its supplemental brief, Bad Boys argued that sentencing in the underlying criminal matter had been postponed in order to permit Dang to sell his business.[4]  Bad Boys argued that the continuance of the sentencing hearing rendered the bond void because such a delay was contrary to section 1191, which provides generally that a defendant is to be sentenced within 20 court days after a plea of guilty.  Bad Boys also argued that the bond should be exonerated because the plea agreement containing the nine-year indicated sentence and the continuance of the sentencing hearing materially increased the surety's risk under the bond.

The People filed an opposition to the motion, and Bad Boys filed a reply brief. Thereafter, the trial court (Judge Lewis) heard oral argument and denied the motion to vacate the forfeiture of the bail bond and exonerate the bond.  Judge Lewis reasoned in part, "I don't find there was a material increase to the risk of the surety by [Dang] giving a time waiver for the sentencing date."  Judge Lewis concluded by noting that time waivers are "extremely common" and adding, "I don't find that it is unlawful to set the sentencing beyond without notice to the surety . . . ."

Approximately two weeks after the denial of Bad Boys's motion, the trial court

---

[4]     Together with its supplemental brief, Bad Boys filed a declaration from its counsel.  In his declaration, Bad Boys's counsel described a January 22, 2014 conversation that counsel had with the prosecutor in Dang's criminal case.  Bad Boys's counsel described this conversation as follows:  "According to [the prosecutor], [Dang's] counsel represented to the Court the reason for extending the sentencing date to November 21, 2013, was to allow [Dang] to get his affairs in order, to take care of his family and to 'sell his business.'  According to [the prosecutor], this discussion with the Judge was held off the record."

5

(Judge Danielsen) granted summary judgment against North River on the bail bond forfeiture in the amount of $75,000 plus costs and interest.

Appellants filed a notice of appeal from the order denying the motion to vacate the forfeiture of the bond and exonerate the bond and the ensuing summary judgment.

III.

DISCUSSION

A.      *Appellate jurisdiction*

We first consider, sua sponte, whether we have appellate jurisdiction over appellants' appeals.  (E.g., *Drum v. Superior Court* (2006) 139 Cal.App.4th 845, 849 ["because the timeliness of an appeal poses a jurisdictional issue, we must raise the point sua sponte"].)

With respect to the order denying the motion to vacate forfeiture of the bail bond and exonerate the bond, it is well established that, "[a]n order denying a motion to vacate or set aside a forfeiture and exonerate the bail bond is an appealable order."  (*County of Los Angeles v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 538, 542.)  Thus, Bad Boys may appeal the denial of its motion to vacate the forfeiture and exonerate the bail bond.  Further, although the motion to vacate was brought solely by Bad Boys, North River is a party to the action, and, given North River's status as surety on the bond, it was legally aggrieved by the order.  (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 881 ["A party is aggrieved when the judgment or order 'has an immediate, pecuniary, and substantial effect on his interests or rights' "].)  We therefore conclude that North River is a proper party to the appeal from the order

6

denying Bad Boys's motion to vacate. (See *ibid.* [" 'Any party aggrieved' may appeal an adverse judgment or order"].)

However, we conclude that we lack appellate jurisdiction over appellants' appeal from the summary judgment. (See *People v. Souza* (1984) 156 Cal.App.3d 834, 837, fn. 2 ["Ordinarily, a summary judgment against a surety [on a bail bond] is a consent judgment which is not appealable"].) The court in *People v. Fairmont Specialty Group* (2009) 173 Cal.App.4th 146, explained the basis for this rule: "Because bonds generally include a clause authorizing the entry of summary judgment after forfeiture, such judgments are considered nonappealable consent judgments." (*Id.* at p. 151, fn. 5.) The bond at issue in this case contained such an authorizing provision. (See pt. II, *ante*.) We therefore dismiss appellants' appeal insofar as it purports to appeal from the summary judgment.[5]

B.    *The People's stipulation to a deferred sentencing date did not result in a modification of the bond contract*

Appellants claim that the plea agreement and the People's stipulation to a deferred sentencing date changed the bail bond contract and thereby discharged the surety of its obligation on the bond. In support of this claim, appellants contend that the bond contract incorporated all applicable laws in existence at the time the contract was made, including section 1191, which provides generally that a defendant must be sentenced

---

[5]    We emphasize that our dismissal of appellants' appeal with respect to the summary judgment is without substantive effect. We reach the merits of all of the claims raised by appellants in their brief by virtue of our appellate jurisdiction over appellants' appeal from the order denying the motion to vacate the forfeiture of the bail bond and exonerate the bond.

7

within 20 court days after pleading guilty to an offense. Appellants further argue that the plea agreement and the People's stipulation to a sentencing date more than 20 court days after the plea of guilty "deviat[ed] from the statutory provisions of [s]ection 1191," and thereby unlawfully changed an underlying provision of the bond contract.

Appellants' claim raises a question of law. We review such claims de novo. (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 592 [stating that legal claims raised on appeal from an order denying a motion to vacate the forfeiture of a bail bond are reviewed de novo].)

1.      *Factual and procedural background*

On September 23, 2013, the trial court (Judge Yherabide) held a plea hearing for the purpose of accepting Dang's plea. After Judge Yherabide accepted Dang's plea and granted the People's motion to dismiss the balance of the charges alleged in the complaint, the following colloquy occurred:

> "The court: . . . In terms of [a] sentencing date.
>
> "[Defense counsel]: Yes, we have cleared a date with the stipulation by the People for November 21st, your honor.
>
> "The court: Sir, you have a right to be sentenced on [October 22]. Are you willing to waive time to have your sentencing heard on November 21?
>
> "The defendant: Yes Ma'am.
>
> "The court: Terms will be noted. . . . See you in November."

8

2. *Governing law*

a. *A surety's liability on a bond contract is restricted to the terms of the contract*

A bail bond contract is an agreement between a surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond. (*People v. Western Ins. Co.* (2013) 213 Cal.App.4th 316, 322 (*Western*).) A court "cannot extend the contractual obligation of the surety insurer beyond that contemplated by the statutes and found in the bond itself." (*People v. North Beach Bonding Co.* (1974) 36 Cal.App.3d 663, 672.)

b. *Section 1191*

Section 1191 provides in relevant part:

> "In a felony case, after a plea, finding, or verdict of guilty, or after a finding or verdict against the defendant on a plea of a former conviction or acquittal, or once in jeopardy, the court shall appoint a time for pronouncing judgment, which shall be within 20 judicial days after the verdict, finding, or plea of guilty . . . ."

"As a general rule, the time limits on the pronouncement of sentence provided by section 1191 are not jurisdictional, but may be waived by the parties." (*People v. Cunningham* (2001) 25 Cal.4th 926, 1044.) This has long been the law. (See, e.g., *People v. Ford* (1966) 65 Cal.2d 41, 47 ["A defendant cannot complain that he was not sentenced within the time period prescribed by section 1191 of the Penal Code where he waives time for or sanctions the postponement of his sentencing"].)

3.  *Application*

Appellants argue that section 1191 was incorporated into the bond contract because "all laws applicable, in existence when a contract is made, form a part of it." (Quoting *People v. Page* (1929) 100 Cal.App. 252, 254 (*Page*), boldface omitted.) Assuming that section 1191 is an "applicable" law (*Page*, *supra*, at p. 254) incorporated into the bond contract, it is clear that the continuance of the sentencing date did not violate either the letter or the spirit of section 1191, given the defendant's personal waiver of his right to be sentenced within 20 court days. (See *People v. Ford*, *supra*, 65 Cal.2d at p. 47.) Appellants point to nothing in either the bond contract, or the law generally, that provides that a surety is discharged of all obligations on a bond contract merely because a defendant, in accordance with well established law, waives his right to be sentenced within the time frame provided in section 1191 and the People agree to a continuation of the sentencing date.

Accordingly, we conclude that the People's stipulation to a deferred sentencing date beyond the 20-court-day period in section 1191 did not discharge the surety of its obligation on the bond contract.[6]

---

[6] Although appellants suggest that the deferral of sentencing was based in part on the "plea agreement," there is nothing in either the plea agreement or the plea colloquy that supports this contention. As described in part III.B.1, *ante*, the court discussed Dang's sentencing date with the parties *after* the court accepted his plea of guilty. Thus, there is nothing in the record to support appellants' contention that "[t]he [p]lea [a]greement . . . changed the [b]ail [b]ond [c]ontract."

C. *The trial court did not abuse its discretion in determining that the surety was not entitled to discharge of its obligations on the bond on the ground that the plea agreement and the stipulation to defer sentencing in order to permit Dang to sell his business materially increased the surety's risk on the bond*

Appellants claim that the surety is entitled to discharge of the surety's obligations on the bond because the plea agreement and the stipulation to defer sentencing in order to permit Dang to sell his business materially increased the surety's risk on the bond. We review this claim for an abuse of discretion. (See *Western*, *supra*, 213 Cal.App.4th at p. 325 [applying abuse of discretion standard of review in considering claim that trial court erred in failing to exonerate bail bond because government "materially increased [surety's] risk under the bail bond agreement"].)

1. *Governing law*

a. *The nature of a bail bond contract*

In *Western*, *supra*, 213 Cal.App.4th 316, the Court of Appeal outlined the nature of a bail bond contract:

> "As courts have noted, the bail bond agreement is a contract involving three parties. First, it is a contract between the surety and the [defendant]. Under the terms of the bail bond agreement, 'the [defendant] is, in the theory of the law, committed to the custody of the sureties as to jailers of his own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty.' [Citation.] Second, 'the "bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond." ' " (*Id.* at p. 322.)

11

b.    *The government's implied covenant not to materially increase the surety's risks on the bail bond contract*

The *Western* court explained that in light of the nature of a bail bond contract, courts have recognized an implied covenant on the part of the government, " 'that it will not in any way interfere with this covenant between [the defendant and the surety], or impair [the surety's] obligation, or take any proceedings with the [defendant] which will increase the risks of the sureties or affect their remedy against him.' " (*Western*, *supra*, 213 Cal.App.4th at p. 322, quoting *Reese v. United States* (1869) 76 U.S. 13, 22.) Accordingly, "a surety is discharged from its liability under the bail bond agreement if the government, without the surety's consent or knowledge, materially increases the surety's risks." (*Western*, *supra*, at p. 322.)

For example, in *Western*, the Court of Appeal concluded that a court order permitting a defendant to leave the United States materially increased the surety's risk under the bail bond agreement. (*Western*, *supra*, 213 Cal.App.4th at p. 325.) In reaching this conclusion, the *Western* court noted that "[s]ince the 19th century, the United States Supreme Court has recognized that because the power to arrest a [defendant] can be exercised only within the territory of the United States, 'there is an implied covenant on the part of the [defendant] with his sureties, when he is admitted to bail, that he will not depart out of this territory without their assent.' " (*Id.* at p. 322.) The *Western* court further relied on long standing case law that " '[a]ny Government action that substantially encourages the defendant to leave the country in violation of the terms of the bond is a material breach of the Government's implied covenant not to interfere with the covenant

12

between the defendant and the surety.' " (*Id.* at p. 323, quoting *United States v. Galvez-Uriarte* (9th Cir. 1983) 709 F.2d 1323.) Thus, the *Western* court concluded that the trial court's order materially increased the surety's risk on the bond because the action authorized the breach of an implied covenant between the defendant and the surety that he would not depart the county, and also placed the defendant beyond the reach of both the surety and domestic law enforcement agencies. (*Western*, *supra*, at pp. 323-324.) The court reasoned:

> "Here, [the surety] met its burden of showing that the court order permitting [defendant] to travel to the Philippines was made without its consent or knowledge, and materially increased its risks under the bail bond agreement. In particular, the unchallenged declaration of [an investigator retained by Western] established that Western made a good faith effort to locate and apprehend [defendant] in the Philippines, but was prejudiced by the court order permitting [defendant] to travel outside the United States. The order put [defendant] out of reach of the surety and of domestic law enforcement agencies. It permitted him to disregard the court's directive to return, with little chance of apprehension. And significantly, it denied Western the opportunity to exercise its statutory right to surrender [defendant] to the custody of the court, rather than incur the very real risk that he would not return and the bond would be forfeited. [Citation.] The actions of the court thus breached the government's obligation not to materially increase the risk to the surety without notice." (*Ibid.*)

Similarly, in *United States v. Aguilar* (N.D.Cal. 1993) 813 F.Supp. 727 (*Aguilar*), a federal district court concluded that the government had "materially increase[d] the risk of the sure[ties] without [their] knowledge and consent," (*id.* at p. 728) by permitting the defendant to travel outside the federal district in which the defendant had been criminally charged for the purpose of meeting with drug traffickers, as part of an ongoing government investigation. (*Id.* at p. 729.) The *Aguilar* court noted that a magistrate

13

judge had authorized such travel pursuant to a plea agreement with the government through which the defendant "agreed to testify against his suppliers . . . and to assist in future narcotics investigations." (*Ibid.*)

In determining that the government had materially increased the sureties' risk on the bond contract, the *Aguilar* court noted that the bond specifically provided that the defendant "could not travel outside of the Northern District of California." (*Aguilar*, *supra*, 813 F.Supp. at p. 728.) The *Aguilar* court also emphasized that, as a result of the government's actions, the "[d]efendant was authorized to engage in the dangerous activity of assisting the government with narcotics investigations outside of the Northern District." (*Id.* at p. 729; see also *id.* at p. 729, fn. 3 [rejecting argument that bond should be forfeited because sureties were aware that defendant had previously been permitted to travel outside of the Northern District to visit relatives, stating "[w]hile visiting relatives does not materially increase the [s]ureties' risk, assisting the government in drug investigations does"].) The *Aguilar* court also noted that the sureties were prevented from learning the terms of the plea agreement because the agreement had been filed under seal. (*Id.* at p. 729.)

2.    *Application*

In their brief, appellants refer to three actions taken by the government,[7] that they appear to claim materially increased the risks that the surety faced on the bond. First, appellants note that the People and Dang "entered into a plea agreement in which Dang

---

7    As appellants do in their brief, we use the term "government," to refer to the actions of both the trial court and the People.

14

was provided an indicated sentence of 9 years." To the extent appellants intend to argue that, in entering into a plea agreement with an indicated sentence of nine years, the People materially increased the surety's risk under the bond because Dang was less likely to appear for sentencing after learning of his potential sentence, we disagree. At the time of the posting of the bond, Dang faced a potential sentence of 25 years to life in prison.[8] Thus, as the trial court observed in denying Bad Boys's motion, the indicated sentence of nine years was far below the potential sentence that Dang faced at the time "the bond company chose to secure his attendance with the bond." Further, appellants were free to monitor the case, learn of the nine-year indicated sentence, and return Dang to custody (and thereby exonerate its bond) to the extent they deemed him a flight risk in light of indicated sentence. (See § 1300, subd. (a) ["At any time before the forfeiture of their undertaking, or deposit by a third person, the bail or the depositor may surrender the defendant in their exoneration"].)

Appellants also note that the People agreed to a stipulation with defense counsel whereby Dang would not be sentenced until 59 days after his plea, rather than within 20 court days after his plea as provided in section 1191. However, appellants fail to explain how this relatively brief continuance of the sentencing hearing[9] materially increased the surety's risk. Since the law has long permitted a defendant to waive the 20-court-day sentencing period (see pt. III.B.2, *ante*), and, as the trial court noted, it is "extremely

---

[8] The trial court noted that "[t]he complaint that was filed charges two strike priors, a serious felony prior, and several charges."

[9] As noted in part III.B.1, *ante*, Dang agreed to waive his right to be sentenced by October 22, in favor of a stipulated November 21 sentencing date.

15

common" for defendants to provide a sentencing time waiver, the surety could reasonably be expected to understand the possibility that sentencing might occur outside the 20-court-day window at the time it posted the bond. Further, appellants were free to monitor to the proceedings and return Dang to custody in exoneration of the bond to the extent that they considered the time waiver to have increased the surety's risk on the bond. (See § 1300, subd. (a).)[10] We therefore conclude that the trial court did not abuse its discretion in determining that the People's stipulation to the trial court's setting of a sentencing date outside the 20-court-day period provided in section 1191 did not materially increase the risk to the surety.

Finally, appellants contend that the surety's risk was materially increased by the fact that sentencing was deferred in order to permit Dang to sell his business.[11] We are not persuaded. Deferring a sentencing date in order to permit a defendant to sell his business is not in any way analogous to the travel authorized in *Western* and *Aguilar*. Most importantly, unlike the excursions authorized in *Aguilar* and *Western*, Dang was free to sell his business at any time. Moreover, unlike in *Aguilar*, deferring sentencing to permit Dang to sell his business did not put Dang beyond the reach of the surety or domestic law enforcement, nor did it directly authorize the defendant to breach his implied covenant with the surety to remain in the country. Further, the government's

---

[10]    Appellants point to no authority, and we are aware of none, suggesting that the government is required to provide notice to the surety of the setting of a sentencing date outside the 20-day period provided in section 1191.

[11]    In support of this argument, appellants note that the surety could not have discovered the reason for the delay by monitoring the proceedings because the reason for the delay was given "off the record."

16

action in this case did not authorize the defendant to leave the charging jurisdiction in order to engage in the "dangerous activity of assisting the government with narcotics investigations" in direct contravention of the bail bond, as in *Aguilar*.  (See *Aguilar*, *supra*, 813 F.Supp. at p. 729.)

Accordingly, we conclude that the trial court did not abuse its discretion in determining that the surety was not entitled to discharge of its obligations on the bond on the ground that the government materially increased the surety's risk on the bond.

IV.

DISPOSITION

The order denying the motion to vacate forfeiture and exonerate the bail bond is affirmed.  The appeal from the summary judgment is dismissed.


AARON, J.

WE CONCUR:

NARES, Acting P. J.

IRION, J.

17