Filed 3/16/16  P. v. International Fidelity Ins. Co. CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>INTERNATIONAL FIDELITY<br>INSURANCE COMPANY,<br><br>    Defendant and Appellant. | E062079<br><br>(Super.Ct.No. PSC1404961 &<br>INF1301619)<br><br>O P I N I O N |

APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos, Judge.  Affirmed.

Law Office of John Rorabaugh, John M. Rorabaugh and Robert T. White for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and Anita Willis, Karin Watts-Bazan, and Lisa Traczyk, Deputy County Counsel for Plaintiff and Respondent.

1

# I.  INTRODUCTION

Defendant and appellant, International Fidelity Insurance Company (Surety), appeals from an order denying its motion to vacate the forfeiture of a $105,000 bail bond and exonerate the bond.  The appeal is also taken from the subsequently-entered summary judgment on the bond.  We affirm.

While the principal on the bond, Jose Rodriguez, was released from custody on the bail bond, he and his counsel were present in court, awaiting his arraignment, when plaintiff and respondent, the People, filed and served his counsel with a motion to increase the bail bond amount to $400,000 (Pen. Code, § 1269c)[1] and place a hold on his release (return him to custody) pending the court's determination that the funds used to post the increased bond were not feloniously obtained (§ 1275.1).  After the motion was filed and served on his counsel, Rodriguez left the courtroom and did not return for his arraignment.  The court then declared the bond forfeited.  (§ 1305.)  Surety was unable to locate Rodriguez during the following 185-day appearance period (§ 1305, subd. (b)), which was extended for an additional 180 days (§ 1305.4).  On the last day of the extended appearance period, the court denied Surety's motion to exonerate the bond, and subsequently entered summary judgment in favor of the People on the forfeiture order. (§ 1306.)

On this appeal, Surety claims the forfeiture order must be vacated and the bail bond exonerated because the People materially increased the risk that the bail bond

---

[1] Unspecified statutory references are to the Penal Code.

would be forfeited by failing to give Surety *advance notice* of its motion to increase the bail bond amount and place a hold on Rodriguez's release. We disagree. Nothing in the bail statutes (§§ 1268-1320), in any other statute, or in the bail contract required the People to give Surety *any notice* of the People's motion to increase the bail bond and place a hold on Rodriguez's release. Having failed to secure the People's agreement to give it advance notice of the People's motion, Surety assumed the risk that Rodriguez would flee when he learned of the motion.

## II. FACTS AND PROCEDURAL HISTORY

On May 21, 2013, Rodriguez was arrested for possessing a controlled substance for sale (Health & Saf. Code, § 11351) and child endangerment (Pen. Code, § 273a, subd. (a)). He was released from custody on May 22, after Surety, through its bail agent, Lucky Bail Bonds, issued bail bond No. IS250K-10664, in the amount of $105,000, to secure Rodriguez's appearance in court.[2] (Pen. Code, § 1269c.) The bail bond stated that Rodriguez had been ordered to appear for his arraignment on July 24, 2013.

On June 6, 2013, the People, through a deputy district attorney, signed but did not file a motion to increase Rodriguez's bail from $105,000 to $400,000 (Pen. Code, § 1269c) and place a hold on his release (that is, return him to custody) pending the court's determination that funds used to post the increased bail were not feloniously

---

[2] The record does not reveal precisely how the $105,000 bond amount was determined, but it appears to have been set in accordance with the County of Riverside's bail schedule for a defendant charged with possessing fewer than 454 grams of cocaine for sale and child endangerment.

3

obtained (Pen. Code, § 1275.1). In their motion, the People claimed Rodriguez was in possession of 274.1 grams of cocaine, worth an estimated $21,928, along with plastic baggies, a digital scale, and other indicia of drug sales, and that Rodriguez had a prior conviction, in September 2003, for violating Health and Safety Code section 11351, rendering him ineligible for probation (Pen. Code, § 1203.07, subd. (a)(1)) and subjecting him to a three-year sentencing enhancement (Health & Saf. Code, § 11370.2, subd. (a)). The People also pointed out that Rodriguez was unemployed; he admitted he was selling cocaine to support his family; and his girlfriend earned only $1,300 per month. The People argued bail should be increased because Rodriguez posed a flight risk, and a hold should be placed on his release (that is, he should be returned to custody), pending the court's determination that any money used to post his increased bail was not feloniously obtained through drug sales or otherwise.[3]

The People did not file or serve their motion on June 6, the date the People, through a deputy district attorney, signed the motion and supporting declaration. Instead, the motion was filed and served on Rodriguez's counsel on July 24, 2013, while Rodriguez and his counsel were in the courtroom awaiting Rodriguez's arraignment.

---

[3] On June 26, 2013, the People filed a felony complaint charging Rodriguez in two counts with possessing cocaine for sale (Health & Saf. Code, § 11351), and child endangerment (Pen. Code, § 273a, subd. (a)). The complaint also alleged Rodriguez had "one or more prior convictions for violating section 11351, 11351.5, 11352, 11378, 11378.5, 11379 or 11379.6 of the Health and Safety Code within the meaning of Penal Code section 1203.07[, subdivision] (a)(11)." That is, Rodriguez had at least one prior drug-related conviction rendering him ineligible to be sentenced to probation on his current drug-related offense. (Pen. Code, § 1203.7.)

Before the court called his case, Rodriguez left the courtroom and did not return for his arraignment. After attempting to locate Rodriguez outside the courtroom, his counsel reported to the court that Rodriguez had left the courthouse. The court then ordered the $105,000 bond forfeited (§ 1305, subd. (a)(1)), increased bail to $400,000 (§ 1269c), and placed a hold on Rodriguez's release on bail (§ 1275.1). Also on July 24, the clerk mailed notice to Surety and its agent, Lucky Bail Bonds, that the $105,000 bail had been ordered forfeited. (§ 1305, subd. (b).)

Surety did not have a bail agent or other representative present in court on July 24, 2013, and the People did not give Surety any notice of its motion to increase bail and place a hold on Rodriguez's release. The statutory 185-day appearance period, or exoneration period, for apprehending Rodriguez and exonerating the bail expired on January 26, 2014. (§ 1305, subd. (b).) On January 21, 2014, Surety moved to extend the appearance period an additional 180 days, to July 28, 2014. (§ 1305.4.) The court granted the motion on February 13, 2014, and extended the appearance period to July 28, 2014. (§ 1305, subd. (j).) Surety was unable to locate Rodriguez before July 28, 2014.

On July 28, 2014, Surety filed a motion to vacate the forfeiture and exonerate the bail, claiming the People materially increased the risk that the bail would be forfeited by failing to give Surety or its agent, Lucky Bail Bonds, advance notice of the People's motion to increase bail and place a hold on Rodriguez's release. The court denied the motion following a September 5, 2014, hearing. On September 15, the court entered summary judgment in favor of the People and against Surety for $105,450, the amount of

5

the bail, plus costs.  (§ 1306.)  Surety appealed from the September 5 order "and the judgment herein."

### III.  DISCUSSION

A.  *Standard of Review*

An order denying a motion to set aside the forfeiture of a bail bond is appealable. (*People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1382; § 1308.)  A summary judgment forfeiting bail is also appealable when, as Surety claims here, "'"the judgment was not entered in accordance with the consent given in the undertaking." [Citations.]'" (*People v. Harco National Ins. Co.* (2005) 135 Cal.App.4th 931, 933, fn. 1.)  An order denying a motion to set aside the forfeiture of a bail bond is normally reviewed for abuse of discretion.  (*People v. Lexington National Ins. Corp.* (2010) 181 Cal.App.4th 1485, 1489.)  When, however, the issue is one of statutory construction or contract interpretation, and the evidence is undisputed, we review the order de novo.  (*People v. International Fidelity Ins. Co.* (2010) 185 Cal.App.4th 1391, 1395.)  We review the September 5, 2014, order de novo, because the issues turn on the terms of the bail contract and the relevant evidence is not in dispute.  (*Ibid*.)

B.  *Overview of the Relevant Bail Statutes*

"The basic scheme as to bail is almost absurdly simple.  The defendant can post a sum of money with the court to be forfeited if he shall not make himself available at all proper times in connection with the legal process.  Very often he will seek out a bailbondsman, who posts an undertaking by means of which a corporate surety agrees to

6

pay the set sum if defendant does not properly appear.  The cash, the undertaking, and the

bondsman himself are each referred to as bail.  [Citation.]"  (*People v. Amwest Surety*

*Insurance Co.* (1980) 105 Cal.App.3d 51, 53-54.)

Section 1305 governs the forfeiture of a bail bond and sets forth certain grounds

upon which the forfeiture may be set aside and the bail exonerated.  First, when the

defendant released on the bail fails to appear in court for his or her arraignment, or as

otherwise lawfully required, and without sufficient excuse, the trial court must declare the

bail forfeited in open court.  (*People v. Granite State Insurance Co.* (2003) 114

Cal.App.4th 758, 762; § 1305, subd. (a).)  Within 30 days of the forfeiture, the court clerk

must serve notice of the forfeiture on the surety and its bail agent, and if the bond amount

exceeds $400, the notice of forfeiture must be served by mail.  (§ 1305, subd. (b).)

The surety has 185 days from the date the notice of forfeiture is mailed (180 days

plus five days for service by mail), to obtain relief from the forfeiture on any of the

grounds set forth in section 1305.  (§ 1305, subd. (b); *People v. United States Fire Ins.*

*Co.* (2015) 242 Cal.App.4th 991, 999.)  The 185-day period is known as either the

"exoneration period" or the "appearance period."  (*People v. United States Fire Ins. Co.*,

*supra*, at p. 1000.)  Both terms are aptly descriptive, and we will use the term

"appearance period" given its abundant use in the case law.  (See, e.g., *People v.*

*American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658.)  The appearance

period may be extended by 180 days.  (§ 1305.4.)  If the surety fails to obtain relief from

the forfeiture within the appearance period, including extensions, the court shall enter summary judgment against the surety on the bond, plus costs.  (§ 1306, subd. (a).)

As noted, section 1305 sets forth certain grounds upon which the forfeiture of a bond may be set aside and the bail exonerated during the appearance period.[4]  But "it has long been the law that the remedies provided in section 1305 for exoneration of a bond forfeiture under certain conditions are not exclusive.  [Citation.]  Thus, a surety may be entitled to exoneration of a bond where circumstances outside those set forth in section 1305 exist.  [Citations.]"  (*People v. Western Ins. Co.* (2013) 213 Cal.App.4th 316, 324 (*Western Ins. Co.*).)

C.  *The Bail Bond Contract*

A bail bond agreement is a contract involving three parties:  the surety, the principal or the criminal defendant, and the government or the People.  (*Western Ins. Co.*, *supra*, 213 Cal.App.4th at p. 322.)  First, the bail bond agreement is a contract between the surety and the principal:  "Under the terms of the bail bond agreement, 'the principal is, in the theory of the law, committed to the custody of the sureties as to jailers of his

---

[4]  The forfeiture must be vacated and the bail exonerated if the court clerk fails to give notice of the forfeiture in accordance with section 1305 (§ 1305, subd. (b)(1)); the defendant appears voluntarily or in custody during the appearance period (*id.*, subd. (c)(1)), or the defendant is surrendered to custody by the bail or is arrested in the underlying case during the appearance period (*id.*, subd. (c)(2)).  Additional grounds for vacating the forfeiture and exonerating the bond obtain when the defendant is deceased or is otherwise permanently unable to appear in court (*id.*, subd. (d)); when the defendant is in custody beyond the jurisdiction of the court and the prosecuting agency elects not to seek the defendant's extradition (*id.*, sub. (f)); and when the defendant is outside the jurisdiction of the court but in the temporary custody of the bail and other criteria are met (*id.*, subds. (g), (h)).

own choosing, not that he is, in point of fact, in this country at least, subjected or can be subjected by them to constant imprisonment; but he is so far placed in their power that they may at any time arrest him upon the recognizance and surrender him to the court, and, to the extent necessary to accomplish this, may restrain him of his liberty.'" (*Ibid.*, quoting *Reese v. United States* (1869) 76 U.S. 13, 21 (*Reese*).) Second, "the 'bail bond is a contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond.' [Citation.]" (*People v. American Contractors Indemnity Co.*, *supra*, 33 Cal.4th at p. 657.)

D. *Analysis of Surety's Claim*

Surety does not claim that any of the grounds set forth in section 1305 for vacating the forfeiture and exonerating the bail apply here. Instead, it claims its motion to set aside the forfeiture and exonerate the bond was erroneously denied because the People materially increased the risk that the bond would be forfeited by failing to give Surety advance notice of the People's motion to increase the bond (§ 1269c) and place a hold on Rodriguez's release (§ 1275.1). By failing to give Surety advance notice of the People's motion, Surety argues the People breached its implied obligation, under the terms of the bail contract, not to hinder or prevent Surety from performing its contractual obligation to ensure Rodriguez's appearance in court and ultimately exonerate the bail.[5]

---

[5] Section 1300, subdivision (a) provides: "At any time before the forfeiture of their undertaking, or deposit by a third person, the bail or the depositor may surrender the
*[footnote continued on next page]*

Surety's claim requires us to interpret the terms of the parties' bail contract.  To this end, we apply settled rules of contract interpretation:  "'"The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.]  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.  [Citation.]  "The words of a contract are to be understood in their ordinary and popular sense."'  [Citation.]  Although extrinsic evidence is admissible to prove a meaning to which a contract is reasonably susceptible [citation], no party offered any extrinsic evidence construing the terms of the bail bond, nor does any party contend the trial court failed to admit or consider any extrinsic evidence.  'When no extrinsic evidence is introduced, or when the competent extrinsic evidence is not in conflict, the appellate court independently construes the contract.' [Citation.]  'California recognizes the objective theory of contracts [citation], under which "[i]t is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation" [citation].  The parties' undisclosed intent or understanding is irrelevant to contract interpretation.' [Citation.]" (*People v. International Fidelity Ins. Co.*, *supra*, 185 Cal.App.4th at p. 1396.)

The parties' one-page "boilerplate" bail contract simply states that Surety "hereby undertakes that [Rodriguez] will appear in the above-named court on the date set forth to

---

*[footnote continued from previous page]*
defendant in their exoneration, or he may surrender himself, to the officer to whose custody he was committed at the time of giving bail . . . ."

answer any charge in any accusatory pleading based upon the acts supporting the charge, in whatever court it may be prosecuted, and will at all times hold him/herself amenable to the orders and process of the court, and if convicted, will appear for pronouncement of judgment or grant of probation. If [Rodriguez] fails to perform any of these conditions, [Surety] will pay to the People of the State of California the sum of ONE HUNDRED AND FIVE THOUSAND Dollars ($105,000)."

Nothing in the bail contract required the People to give Surety advance notice of the People's motion to increase the bail or place a hold on Rodriguez's release. Indeed, the bail contract is completely silent concerning the level of the principal's flight risk or what circumstances may increase Surety's risk of forfeiting the bail. And, as the People point out, nothing in any of the bail statutes (§§ 1268-1320), or in any other statute, required the People to give Surety *any* notice, including some unspecified type of advance notice, of the People's motion to increase the bail.[6]

Given these circumstances, we decline to interpret the bail contract to include an implied covenant requiring the People to give Surety *advance notice*, or any notice, of the People's motion to increase the bail and place a hold on Rodriguez's release. Nothing in the bail contract implies such a provision, and to interpret the bail contract as including one would impose an obligation on the People that it did not bargain for and was unaware of when it accepted the bail. Had Surety wished to be given advance notice of the

---

[6] Of course, any increase in the $105,000 bail amount would not have been binding on Surety without its consent, because Surety's liability on the existing bail bond was expressly limited to $105,000.

People's motion to increase the bail or place a hold on Rodriguez's release, it could have negotiated such a provision in the bail contract, but it did not do so.

Surety correctly points out that every bail contract includes an implied covenant that the government will not *in any way* materially increase the risk that the surety will forfeit the bail. (*Reese*, *supra*, 76 U.S. at pp. 21-22 [exonerating bail based on implied covenant in bail contract that government would not allow the principal to leave the United States, where the surety could not arrest him, without the surety's consent]; *Western Ins. Co.*, *supra*, 213 Cal.App.4th at pp. 322-324 [following *Reese* and exonerating bail where court allowed the principal to travel to the Philippines, without the surety's consent, and the principal did not return].) But Surety points to no case, and we have found none, which has extended this implied covenant to include an advance notice provision like the one Surety urges us to read into the bail contract here.

As explained in *Western Ins. Co.*, *supra*, 213 Cal.App.4th at page 322: "Since the 19th century, the United States Supreme Court has recognized that because the power to arrest a principal can be exercised only within the territory of the United States, 'there is an implied covenant on the part of the principal with his sureties, when he is admitted to bail, that he will not depart out of this territory without their assent. There is also an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in any way interfere with this covenant between them, or impair its obligation, or take any proceedings with the principal which will increase the risks of the sureties or affect their remedy against him.' (*Reese*, *supra*, 76 U.S. at pp. 21-22.)

12

Accordingly, a surety is discharged from its liability under the bail bond agreement if the government, without the surety's consent or knowledge, materially increases the surety's risk. (*Id*. at p. 22.) Similarly, the California Supreme Court has held that a surety's obligation was exonerated where the state delayed, hindered and rendered practically impossible the performance of the surety's obligations under the bail bond agreement. [Citation.]"

In *Reese* and *Western Ins. Co.*, the government allowed the principals to leave the United States while they were released on bail, and the principals did not return. The bails were exonerated because the sureties had no authority to arrest the principals outside the United States, and the sureties were thus unable to avoid forfeiture. (*Reese*, *supra*, 76 U.S. at p. 22; *Western Ins. Co.*, *supra*, 213 Cal.App.4th at pp. 319-320.) Similarly in *People v. Meyers* (1932) 215 Cal. 115, 118-120, cited in *Western Ins. Co.*, *supra*, at page 322, the bail was exonerated because jailers in San Francisco County released the principal after she completed her sentence there, despite a hold on her release to ensure her appearance in the Alameda County Superior Court on charges underlying the bail. (*People v. Meyers*, *supra*, at pp. 118-119.) The *Meyers* court pointed out that the surety did not assume the risk that the government would "hinder or prevent" the surety's performance of its obligations under the bail contract by releasing the principal despite the hold on her release. (*Id*. at p. 119.)

We decline to extend the implied covenant in the bail contract, prohibiting the government from materially increasing Surety's risk of forfeiture, to include an advance

13

notice provision like the one Surety urges here.  As explained, to imply such a provision into the bail contract would impose an obligation on the People that it did not bargain for and was unaware of when it accepted the bail.  The People violated no statutory notice provision when it failed to give Surety advance notice, or any other notice, of its motion to increase the bail amount and place a hold on Rodriguez's release.  Indeed, Surety was not a party to the criminal action by the People against Rodriguez.  By failing to obtain the People's express agreement to provide it with advance notice of the People's motion, Surety assumed the risk Rodriguez would flee when he learned of the motion.[7]

## V.  DISPOSITION

The order denying Surety's motion to vacate the forfeiture and exonerate the bond and the summary judgment on the bond are affirmed.  The People shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER<br>
J.

We concur:

---

[7]  As the People pointed out at oral argument, a number of things may happen during the course of a criminal proceeding that, to a greater or lesser extent, may increase the risk that the defendant will abscond and the surety will forfeit the bail.  For example, following a pretrial settlement conference the defendant may suddenly realize that he is likely to be convicted, despite his earlier belief that he would be acquitted, and he may abscond rather than appear at trial and face the charges.  If the surety wishes to have advance notice of *any* aspect of the criminal proceeding, it should obtain the People's express agreement to provide it with such notice.

RAMIREZ
                    P. J.

McKINSTER
                    J.